NICOLETTE & PERKINS, P.A.
3 University Plaza, Fifth Floor
Hackensack, New Jersey 07601
(201) 488-9080
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------x
THE UNITED STATES OF AMERICA    :
for the use of MATHUSEK         :
INCORPORATED,                   :       Civil Action No.
                                :
          Plaintiff,            :
                                :       05 CIV. 9097
v.                              :
                                :       COMPLAINT
J. KOKOLAKIS CONTRACTING, INC., :
SEABOARD SURETY COMPANY AND     :       JUDGE CONNER
ST. PAUL FIRE & MARINE          :
INSURANCE COMPANY,              :
                                :
          Defendants.           :
-------------------------------x
```

This complaint of the United States of America for the use and benefit of Mathusek Incorporated (hereinafter "Mathusek") against J. Kokolakis Contracting, Inc. (hereinafter "Kokolakis") and Seaboard Surety Company (hereinafter "Seaboard") and St. Paul Fire & Marine Insurance Company (hereinafter "St. Paul") states as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction of this action is founded on Sections 3131 through 3133 of Title 40 of the United States Code, commonly

referred to as the Miller Act, and accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 as an action arising under the laws of the United States.

2.    This matter is venued in the District Court for the Southern District of New York since a substantial part of the events or omissions giving rise to this matter occurred in West Point, Orange County, New York.

## PARTIES

3.    Mathusek is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business located in Bergen County, New Jersey.

4.    Upon information and belief, the defendant, Kokolakis, is a corporation organized and existing under the laws of the State of New York having a principal place of business in Suffolk County, New York.

5.    Upon information and belief, the defendants, Seaboard and St. Paul, are insurance companies approved and authorized to transact business in the State of New York.

## COUNT ONE

6.    The United States, acting through the U.S. Army Corps. of Engineers, and Kokolakis entered into a contract in which Kokolakis agreed to construct the project known as the Arvin Cadet Physical Development Center Phase II and III at the United States Military Academy, West Point, New York; Contract No. DACA51-02-C-0005.  Upon

information and belief, this Contract was to be administered by the United States Army Corps. of Engineers.

7.   Mathusek is not in possession of the contract, however, upon information and belief, Kokolakis, Seaboard and St. Paul are in possession of same.

8.   In accordance with Section 3131 of Title 40 of the United States Code, Kokolakis, as principal, and Seaboard and St. Paul, as sureties on April 4, 2002, executed a payment bond to the United States in which Kokolakis, as principal, and Seaboard and St. Paul, as sureties, bound themselves jointly and severally in the sum of $14,562,000.00 as to Seaboard and $57,407,750.00 as to St. Paul, conditioned that if the principal will promptly make payment to all persons supplying labor and material in the prosecution of the work provided in said contract, then this obligation to be void; otherwise, to remain in full force and effect.  A copy of the bond is attached hereto as **Exhibit "A."**

9.   Upon information and belief, the bond was duly accepted by the United States, and on such acceptance, said contract for the construction or completion of Arvin Cadet Physical Development Center Phase II and III, United States Military Academy, West Point, New York, was awarded to Kokolakis.

10.  On or about September 13, 2004, Kokolakis and Mathusek entered into a written subcontract in which Mathusek was to provide and install a sports floor, for an agreed and reasonable price of

$285,000.00.    A copy of the subcontract is attached hereto as **Exhibit "B."**

11. Thereafter, Mathusek, at the request of Kokolakis, and pursuant to a written subcontract, provided and installed sports flooring at an agreed price and reasonable value of $285,000.00.

12. Because the sub floor surface area upon which the sports floor was to be installed was not level, and therefore, not within the tolerances required to apply the sports flooring as prepared and delivered by Kokolakis and its other subcontractors to Mathusek, Koklakis requested that Mathusek provide remedial work at an additional charge.

13. The sub floor remedial work was not part of the original subcontract between Mathusek and Kokolakis.  Kokolakis and Mathusek agreed to perform this remedial work on a time and materials basis, plus 10% and 5% respectively, whereby Mathusek would submit its time and materials in writing for approval by Kokolakis.  Mathusek provided remedial work to level the sub floor surface areas upon which the sports floor was to be laid, so that it would conform with the specifications required for the application of the sports flooring material.

14. Mathusek performed the remedial work and submitted its time and materials to Kokolakis, which Kokolakis signed.  A copy of these documents are attached hereto as **Exhibit "C."**

15. Mathusek performed the remedial work at the reasonable

-4-

price of $83,609.00.

16.    Mathusek was a subcontractor of Kokolakis, and the installation of sports flooring and sub floor surface leveling work performed by Mathusek was required to be performed by Kokolakis under its contract with the United States by and through the United States Army Corps. of Engineers.

17.    Kokolakis has failed and neglected to pay Mathusek a sum of $112,108.80 in accordance with Kokolakis' subcontract and remediation agreement with Mathusek.  This sum represents the total due in combining the value of the subcontract and the remedial work, less any payments received and credits given.

18.    More than ninety (90) days have expired since Mathusek last performed such work in connection with said project for which this claim is made against Kokolakis.  Mathusek has complied with all rules and requirements of the Miller Act for perfecting a right of action under the bond.  All conditions precedent to the making of this claim have performed or have occurred.

19.    One (1) year has not elapsed from the date on which the last work was performed by Mathusek for Kokolakis on the construction project, and although due demand has been made on Kokolakis, Seaboard and St. Paul, no part of the sum of $112,108.80, or any interest on it, or any sums already stated above, have been paid to Mathusek.

Wherefore, the United States of America, for the use and

-5-

benefit of Mathusek, Incorporated, a New Jersey Corporation, demands judgment against defendants and each of them in the sum of $112,108.80.

**COUNT TWO**

20.  Mathusek repeats and realleges the allegations contained in paragraphs 1 through 18 of this complaint as though fully set forth herein.

21.  Mathusek invokes the pendent jurisdiction of this Court as to any claims or causes of action which are not subject to the Miller Act, such Miller Act claims being a substantial issue before this Court.  Any and all claims found pendant are joined as being derived from the common, operative facts of the Miller Act claim stated in this complaint.

22.  As a result of Kokolakis's breach of contract, Mathusek has been damaged.

**COUNT THREE**

23.  Mathusek repeats and realleges each and every allegation set forth in paragraphs 1 through 21 of the Complaint as if set forth at length herein.

24.  Kokolakis has been unjustly enriched.

**COUNT FOUR**

25.  Mathusek repeats and realleges each and every allegation set forth in paragraphs 1 through 23 of the Complaint as if set forth at length herein.

-6-

26.  Kokolakis is indebted to Mathusek in the amount of $112,108.80 on a certain book account for work, labor and services furnished by Mathusek to Kokolakis at Kokolakis's request.

27.  Payment has been demanded and has not been made.

### COUNT FIVE

28.  Mathusek repeats and realleges each and every allegation set forth in paragraphs 1 through 26 of the Complaint as if set forth at length herein.

29.  Kokolakis, being indebted to Mathusek in the amount of $112,108.80 upon an account stated between them, did promise to pay said sum upon demand.

30.  Payment has been demanded and has not been made.

**WHEREFORE**, Mathusek demands judgment against Kokolakis for damages, interest, costs of suit, including reasonable attorney fees, and for such other and further relief as the Court may deem proper.

### COUNT SIX

31.  Mathusek repeats and realleges each and every allegation set forth in paragraphs 1 through 29 of the Complaint as if set forth at length herein.

32.  Mathusek sues Kokolakis for work, labor and services furnished by Mathusek to Kokolakis in reliance upon the promise of Kokolakis to pay for said work, labor and services.

33.  Payment has been demanded and has not been made.

34.  As a result, Mathusek has been damaged.

**WHEREFORE,** Mathusek demands judgment against Kokolakis for damages, interest, costs of suit, including reasonable attorney fees, and for such other and further relief as the Court may deem proper.

NICOLETTE & PERKINS, P.A.
Attorneys for Plaintiffs,

By: _____
ERIC R. PERKINS

Dated: 19 Oct 2005

**PAYMENT BOND**
*(See instructions on reverse)*

OMB No.:9000-0045

**APRIL 4, 2002**

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | |
|---|---|---|
| J. KOKOLAKIS CONTRACTING INC.<br>585 Route 25A<br>Rocky Point, NY 11778 | ☐ INDIVIDUAL | ☐ PARTNERSHIP |
| | ☐ JOINT VENTURE | ☒ CORPORATION |
| | STATE OF INCORPORATION **NY** | |

| SURETY(IES) *(Name(s) and business address(es)* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| SEABOARD SURETY COMPANY &<br>ST. PAUL FIRE & MARINE INSURANCE COMPANY<br>499 Thornall Street<br>Edison, NJ 08837 | MILLION(S)<br>71 | THOUSAND(S)<br>969 | HUNDRED(S)<br>750 | CENTS<br>00 |
| | CONTRACT DATE<br>3/28/02 | CONTRACT NO.<br>DACA51-02-C-0005 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. J. KOKOLAKIS CONTRACTING INC. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Nick Leo<br>Vice President | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | |
| NAME(S) *(Typed)* | 1. | 2. | |

| CORPORATE SURETY(IES) | | | |
|---|---|---|---|
| NAME & ADDRESS | SEABOARD SURETY COMPANY<br>499 Thornall St., Edison, NJ 08837 | STATE OF INC.<br>NY | LIABILITY LIMIT<br>$ 14,562,000 |
| SIGNATURE(S) | 1. *[signature]* | 2. | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. GERARD S. MACHOLZ<br>ATTORNEY-IN-FACT | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.2229(c)

CORPORATE SURETY(IES) (Continued)

| SURETY B | NAME & ADDRESS | ST. PAUL FIRE & MARINE INSURANCE COMPANY<br>499 Thornall St., Edison, NJ 08837 | STATE OF INC.<br>MN | LIABILITY LIMIT<br>$ 37,407,756 | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | *[signature]* | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1.   GERARD S. MACHOLZ<br>ATTORNEY-IN-FACT | 2. | | |

| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space

designated "SURETY(IES)" on the face of the form, insert only the lette identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit o Individual Surety (Standard Form 28) for each individual surety, sha accompany the bond. The Government may require the surety t furnish additional substantiating information concerning their financi capability.

4. Corporations executing the bond shall affix their corporate seals Individuals shall execute the bond opposite the word "Corporate Seal and shall affix an adhesive seal if executed in Maine, New Hampshire or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in th space provided.

*[date stamp:]* APR 5 '03 17 AM '02

**J. KOKOLAKIS**
CONTRACTING, INC.

## SUBCONTRACT

AGREEMENT

made this 22nd day of APRIL in the year TWO THOUSAND AND FOUR.

BETWEEN the Contractor:

**J. KOKOLAKIS CONTRACTING, INC.**
**585 ROUTE 25A**
**ROCKY POINT, NY  11778**

and the Subcontractor:

**MATHUSEK SPORTS FLOORS**
**60 WEST ENGLEWOOD AVENUE**
**BERGENFIELD, NJ  07621**

Project:

**ARVIN CADET PHYSICAL DEVELOPMENT**
**CENTER, PHASES 2 AND 3**
**U.S. MILITARY ACADEMY**
**WEST POINT, NEW YORK**
**CONTRACT NO. DACA51-02-C-0005**

Owner:

**U.S. ARMY COPRS OF ENGINEERS**

Architect:

**SASAKI ASSOCIATES, INC.**

**New York**
585 Route 25A
Rocky Point, NY 11778
**631.744.6147**
FAX 631.744.6156
jkcny@jkokolakis.com

1

**Florida**
202 E. Center Street, Suite A
Tarpon Springs, FL 34689
**727.942.2211**
FAX 727.937.5708
jkcfla@jkokolakis.com

THE CONTRACTOR AND SUBCONTRACTOR AGREE AS SET FORTH BELOW.

## ARTICLE 1
## THE CONTRACT DOCUMENTS

The Contract Documents for this Subcontract consist of this Subcontract and any Exhibits attached hereto, the Agreement between the Owner and Contractor dated **April 18, 2002**, the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions), Drawings, Specifications, all Addenda issued prior to execution of the Agreement between the Owner and Contractor, and all Modifications issued subsequent thereto and all unit price items.

All work in Base Items Lines 0001 to 0032 and Optional Bid Items 0055 and 0057 complete with no exceptions

All of the above documents are a part of this Subcontract and are incorporated herein and are available for inspection by the Subcontractor upon his request.

The only Addenda and Modifications issued prior to the execution of this Subcontract and applicable to it are as follows:

**AMENDMENT NO.1 DATED 07/10/01**
**AMENDMENT NO.3 DATED 07/20/01**
**AMENDMENT NO.5 DATED 08/21/01**
**AMENDMENT NO.7 DATED 09/18/01**
**AMENDMENT NO.9 DATED 11/09/01**
**AMENDMENT NO.11 DATED 11/16/01**
**AMENDMENT NO, 13 DATED 01/14/02**
**AMENDMENT NO.15 DATED 03/18/02**

**AMENDMENT NO.2 DATED 07/20/01**
**AMENDMENT NO.4 DATED 08/17/01**
**AMENDMENT NO.6 DATED 08/31/01**
**AMENDMENT NO.8 DATED 11/08/01**
**AMENDMENT NO.10 DATED 11/13/01**
**AMENDMENT NO.12 DATED 12/10/01**
**AMENDMENT NO.14 DATED 03/14/02**
**AMENDMENT NO.16 DATED 03/19/02**

The only Alternates that have been accepted by the Owner and are part of this contract are:

**Optional Bid Items 0055 and 0057.**

## ARTICLE 2
## THE WORK

Subcontractor shall furnish all the labor, material, tools, equipment, supervision, and services necessary to prosecute and complete the work identified and described in Rider "A" attached hereto (the "Work"), being a portion of the work required of Contractor under the General Contract (the "Contract") between the Owner and Contractor. The Work shall be performed by the Subcontractor in a good and workmanlike manner strictly in accordance with the Contract Documents. Subcontractor shall be bound by all the terms of the Contract and assumes all the obligations of Contractor as stated therein applicable to the Work or Subcontractor's performance of the Work including any provisions of the Contract required to be inserted or incorporated into this and other subcontracts, and all such terms, obligations, and provisions of the Contract are hereby inserted and incorporated into this Subcontract as fully as though copied herein. Unless otherwise provided in Rider "A", Subcontractor shall secure and pay for all permits, governmental fees, licenses, and inspections necessary for the proper execution and completion of the Work.

Subcontractor shall make all arrangements and pay all costs required for the completion of the Work, including but not limited to, connection fees, permit fees, tap fees, and other municipal charges. Subcontractor hereby affirms that it has examined all Contract Documents and agrees that it will not plead unfamiliarity with any of said documents in connection with any dispute which may arise hereunder or in connection with any claim for extra compensation.

## ARTICLE 3
## TIME OF COMMENCEMENT AND COMPLETION

TIME IS OF THE ESSENCE OF THIS SUBCONTRACT.   Therefore, as part of the consideration given by Contractor under this Subcontract, Subcontractor agrees: (A) To provide to the Project site, the materials, equipment, labor, and supervision necessary to begin the Work upon Contractor's order to do so; (B) To perform the Work and all parts thereof promptly, diligently and in such order and sequence as Contractor may direct to assure the efficient, expeditious and timely prosecution of the entire work under the Contract; and (C) To furnish sufficient forces, supervision, equipment and materials at such times and for such periods, as will result in progress according to the progress schedule of Contractor or any modification thereof.

Contractor reserves the right to modify any such progress schedule with respect to the required sequence or duration of the Work or any portion thereof.  Subcontractor shall furnish any information requested by Contractor required for scheduling, monitoring or expediting the Work.  Subcontractor shall keep itself fully apprised of the status of the work under the Contract at all times.  Subcontractor shall promptly let all subordinate contracts and purchase orders; shall immediately notify Contractor of any inability of subordinate contractors and material suppliers to meet the requirements of the progress schedule and, when required by Contractor, submit the names of subordinate contractors and material suppliers for approval or comment.  Subcontractor shall furnish to Contractor all necessary information required for expediting and monitoring such activity and shall provide Contractor access to its subordinate contractors and material suppliers for the purpose of expediting or verifying their performance, and if the Work is or will likely be delayed by their non-performance or delay, Subcontractor shall reimburse Contractor for any expenses required to secure or remedy their performance.

The Contractor will suffer for the Subcontractor's failure to perform in accordance with the progress schedule. Hence, the parties agree that the Subcontractor will be liable for all costs incurred by Contractor for failing to perform the Work in accordance with the progress schedule.  The Subcontractor must submit any information requested by Contractor or other information relevant to the development of the progress schedule within fourteen (14) calendar days of the award of this Subcontract. Such information shall relate to the entirety of the Work and the entire duration of the project.

## ARTICLE 4
## THE CONTRACT SUM

The Contractor shall pay the Subcontractor for the performance of the Work, subject to additions and deductions by Change Order, the total sum of:

## TWO HUNDRED AND EIGHTY FIVE THOUSAND DOLLARS
### ($285,000.00)
including tax.

3

The Contract Sum shall not be increased or decreased on account of any change in materials costs or labor rates or on account of changes in any governmental statutes or regulations, including, but not limited to, those relating to the payment of taxes.

## ARTICLE 5
## PROGRESS PAYMENTS

Subcontractor shall provide a detailed payment breakdown (Labor, material, manpower, duration of work) no later than two (2) weeks after award. Subcontractor's schedule of values shall be prepared in such form and supported by such data as the Contractor may direct, and shall be subject to the Contractor's approval. The total of scheduled values shall equal the Subcontract Price. Overhead and profit shall be allocated proportionately over the scheduled values, and no separate payment will be made therefor. No payment will be made until Subcontractor's schedule of values is submitted and approved by Contractor.

On or before the 20th of each month, if no other monthly deadline is established by Contractor, Subcontractor shall submit to Contractor an itemized progress estimate or Application for Payment. Said Applications shall be on such forms or in such format and supported by such data as Contractor may require, and shall be in hard copy, (No facsimile shall be accepted). Said Payment Applications shall show estimated value of work completed, based on Subcontractor's approved schedule of values and on the conditions for payment under the Contract. Payment for material and equipment delivered to and suitably stored on the site shall be subject to and in accordance with the procedures set forth in the Contract Documents.

There shall be retained from each progress payment no more than a total of 10% of the amount received from the Owner on account of Subcontractor's Work. Retainage will be released with final payment.

Each Payment Application shall show the original Subcontract Price, the amount of approved change orders, the current approved Subcontract Price, the value of Work completed or stored to date, the amount to be withheld as retainage and the amount of all previous payments to the Subcontractor, and shall include evidence satisfactory to the Contractor (on such forms or in such formats as Contractor may require) demonstrating that subcontractor has paid all persons supplying labor, materials, or services in connection with the Work.

Contractor shall pay Subcontractor within seven (7) days after receipt of payment from the Owner, an amount equal to the value of Subcontractor's completed and accepted Work, but only to the extent allowed and paid by Owner on account of Subcontractor's work, less retainage, the amount of all previous payments and any amounts for which Subcontractor is or may become liable to Contractor. No payment shall be due under this Subcontract until Subcontractor has supplied all required certificates of insurance and bonds. Contractor's receipt of payment from the Owner on account of Subcontractor's Work is a condition precedent to Contractor's payment obligations hereunder. No partial or final payment shall be due hereunder before Contractor has received payment from the Owner on account of Subcontractor's Work.

4

Contractor shall have the right at any time to apply all or part of any progress or final payment to Subcontractor to such amounts for which Subcontractor is or may become liable to Contractor for defective work not remedied, Work performed by or for Contractor on behalf of Subcontractor, existing or anticipated third party claims arising from the Work, or for any other breach of this Subcontract Agreement or if it becomes apparent that the cost to complete the uncompleted Work would exceed the unpaid balance of the Subcontract Price. No payment, whether progress or final, to the Subcontractor by Contractor shall be construed to be an acceptance of defective work. Contractor specifically reserves the rights of set off and recoupment. Contractor may set off or recoup from any amounts otherwise due under this Subcontract or any other agreement between Contractor and Subcontractor (including Subcontractor's agreements with any joint venture or other entity in which Contractor has an ownership interest) any amounts owed by Subcontractor to Contractor or Owner either under this Subcontract or under any other obligation of Subcontractor.

The Subcontractor shall pay for all materials, equipment and labor used in, or in connection with, the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

If Subcontractor fails to pay promptly for all labor, services and materials furnished to it in connection with the performance of the Work, Contractor may either issue payment in the form of checks payable jointly to the Subcontractor and such unpaid person, OR pay the amount of such liabilities and recover the amount thereof from the Subcontractor directly or by the application of any portion of the Subcontract Price then, or thereafter, becoming due hereunder.

As an integral part of the progress and final payment process under this Subcontract, Subcontractor shall submit with each such payment request a waiver and release of liens and claims, on such forms and in such manner as Contractor may require covering the Work performed and the labor, materials, equipment, and services furnished for which Subcontractor requests payment. Subcontractor shall defend, indemnify, and hold harmless Contractor, its sureties and the Owner (and anyone else that Contractor must indemnify under the terms of the Contract) from the operation and effect of any lien or encumbrance. If any such lien or encumbrance is claimed, Subcontractor shall forthwith notify Contractor, and Contractor shall have the right upon forty-eight (48) hours notice, to require that the Subcontractor furnish a suitable bond, escrow or other reasonable assurance of payment satisfactory to Contractor.

## ARTICLE 6
## FINAL PAYMENT

Final payment on account of the Work shall be made within forty-five (45) days after the last of the following to occur: (A) Full completion of the Work by Subcontractor; (B) Final acceptance of the work by the Architect and Owner; (C) Final payment by Owner to Contractor under the Contract; (D) Furnishing of satisfactory evidence by Subcontractor to Contractor on such forms or in such format as Contractor may require, that the Subcontractor has paid in full all persons furnishing labor, materials or service in connection with the Work and that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to maintain a lien or other claim against the Owner, Architect, Construction Manager, Contractor, Contractor's Surety, or the Project Premises; (E) The return of all drawings, plans and specifications to the Contractor or Architect if required by Contract Documents; (F) Delivery of all guaranties, warranties, bonds, instruction manuals, performance charts, diagrams, as-built drawings and similar items with respect to the Work.

## ARTICLE 7
## INSURANCE

Before commencing the Work, the Subcontractor shall provide, maintain and pay for insurance coverages required by the Contract Documents or the attached Rider "B", whichever is greater. Such coverage shall be maintained in such form and with companies acceptable to Contractor, Architect and Owner, and shall meet all applicable requirements imposed under the Contract or by any governmental authority having jurisdiction over the Work. If Subcontractor fails at any time to secure and maintain appropriate insurance coverage required hereunder, such failure will constitute a material breach by Subcontractor, entitling Contractor to proceed under the provisions for Default, hereof. Subcontractor shall furnish Contractor a certificate, satisfactory to Contractor, from each insurance company providing coverage required hereunder and each certificate shall state that the insurance will not be cancelled, non-renewed or materially changed except after providing at least thirty (30) days actual, written notice to Contractor, or longer if required by the Contract Documents. Contractor shall have the right but not the obligation to review all of Subcontractor's insurance policies applicable to the Project.

Subcontractor shall determine the adequacy, scope, limits, terms and applicability to Subcontractor's Work of any builder's risk or fire insurance, if any, which may be provided or maintained by Contractor or Owner. Subcontractor shall be responsible for providing any such insurance or supplemental insurance it may desire. In the event of a loss for which an Owner's or Contractor's builder's risk or fire insurance policy, if any, provides coverage for Subcontractor's Work, and a recovery from such insurance is subsequently secured, Contractor shall have sole responsibility and discretion for the allocation of such recovery (net of deductible). The initiation or pendency of a claim or recovery under such insurance, if any, shall not be cause for Subcontractor to delay or suspend the performance of any obligation under this Subcontract.

Subcontractor shall be responsible for any desired coverage against damage or loss to its own material, facilities, tools, equipment, plant, scaffold, bracing, and similar items.

Subcontractor shall furnish Contractor a copy of each lost time accident report made to Subcontractor's insurance carriers and shall cooperate with insurers to facilitate the adjustment of any claim or demand arising out of operations within the scope of the Work.

To the extent that the Subcontractor maintains property, auto, liability or excess (umbrella) insurance coverages for damage to or destruction of property, or for bodily injury, sickness, disease or death, the Subcontractor and its insurers hereby waive all rights to make claims against Contractor, Owner, other subcontractors, Construction Manager, and Architect and their agents or employees. Nothing contained in this Article shall relieve the Subcontractor of any indemnity obligations required elsewhere in this Subcontract.

Subcontractor shall cause Contractor to be named as an additional insured under the Subcontractor's general liability policy, and excess (umbrella) liability policy. If required by the Contract Documents, Subcontractor shall cause Owner, Architect, any Construction Manager and their officers, agents and employees, and other indemnitees specified in the Contract Documents, to be named as additional insureds under such policies. Subcontractor and its insurers agree that for liabilities and responsibilities assumed by the Subcontractor under the Subcontract, such general liability policy, automobile liability policy and excess liability policy shall be the primary insurance coverage for the Contractor and any other additional insured(s) required by the Contract Documents, and the insurance maintained by the Contractor and other additional insureds shall be excess and non-contributory. Compliance with this requirement shall be accomplished by endorsement to the policies.

6

## ARTICLE 8
## BONDS

Unless otherwise indicated in Rider "A", <u>Scope of Work</u>, hereof, Subcontractor, at its own expense, shall obtain from a commercial surety acceptable to the Contractor, separate bonds for: A) The due and complete performance of Subcontractor's obligations hereunder (Performance Bond). and, B) The timely payment of all charges for labor, services, and materials furnished for the prosecution of the Work (Payment Bond). Each such bond shall be for a penal sum equal to one hundred percent (100%) of the Subcontract Price, shall be provided by a surety licensed in the appropriate jurisdiction where the Work is to be performed and listed in the current U.S. Department of Treasury circular 570 with an underwriting limitation specified therein consistent with the face amount of the bonds; shall be executed on the forms provided by and in a manner satisfactory to the contractor; and shall be delivered to Contractor within seven (7) days after the execution hereof. No payments to the subcontractor shall be made until bonds are submitted and approved by the contractor.

If Subcontractor is not required to furnish such bonds under Rider "A", Subcontractor shall submit to Contractor a current financial statement whenever requested by Contractor. Subcontractor warrants its financial ability to perform this Subcontract. Contractor reserves the right at any time to require Subcontractor to furnish the performance and payment bonds described above but at Contractor's expense. If Subcontractor cannot or does not obtain and furnish such bonds, such failure will constitute a material breach by Subcontractor entitling Contractor to proceed under the provisions in this Subcontract for Default.

## ARTICLE 9
## INDEMNITY

To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Owner, Contractor, Architect, and consultants, agents and employees of any of them (individually or collectively, "Indemnity") from and against all claims, damages, liabilities, losses and expenses, including but not limited to attorneys' fees, arising out of or in any way connected with the performance or lack of performance of the work under the agreement and any change orders or additions to the work included in the agreement, provided that any such claim, damage, liability, loss or expense is attributable to bodily injury, sickness, disease or death, or physical injury to tangible property including loss of use of that property, or loss of use of tangible property that is not physically injured, and caused in whole or in part by any actual or alleged:

- Act or omission of the Subcontractor or anyone directly or indirectly retained or engaged by it or anyone for whose acts it may be liable; or
- Violation of any statutory duty, regulation, ordinance, rule or obligation by an Indemnitee provided that the violation arises out of or is in any way connected with the Subcontractor's performance or lack of performance of the work under the agreement.

The Subcontractor's obligations under this Article shall apply regardless of whether or not any such claim, damage, liability, loss or expense is or may be attributable to the fault or negligence of the Subcontractor.

7

In the event that an Indemnitee is determined to be any percent negligent pursuant to any verdict or judgment, then, in addition to the foregoing, Subcontractor's obligation to indemnify the Indemnitee for any amount, payment, judgment, settlement, mediation or arbitration award shall extend only to the percentage of negligence of the Subcontractor and anyone directly or indirectly engaged or retained by it and anyone else for whose acts the Subcontractor is liable.

The indemnity obligation under this Article shall not be construed to negate, abridge or reduce any other right or obligation of indemnity that would otherwise exist as to any person or entity described in this Article.

In any and all claims against an Indemnitee by any employee of the Subcontractor or anyone directly or indirectly retained or engaged by it or anyone for whose acts it may be liable, the indemnification obligation under this Article shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

The indemnification obligation under this Article shall not be limited in any way by the amount or type of insurance required to be provided to or for the benefit of an Indemnitee as described in Rider B of this agreement.

## ARTICLE 10
## ASSIGNMENT

Subcontractor shall not assign, transfer, or otherwise dispose of this Subcontract or any part thereof including all or a portion of the Work, nor assign any monies due or to become due hereunder, except with the prior written consent of Contractor.  Any assignment of this subcontract consented to by Contractor shall not operate to relieve Subcontractor of its primary responsibility to Contractor for the due and full performance hereof, and Subcontractor shall be liable to Contractor for all acts and omissions of the Subcontractor's subcontractors and assignees.

Any assignment of this Subcontract or monies under it without the prior written consent of the Contractor will be void and of no effect.

## ARTICLE 11
## SAFETY AND SECURITY

Subcontractor shall execute the Work under this Subcontract in a prudent, cautious and safe manner; continuously maintain a safe and secure workplace; employ at all times whatever means may be reasonably required to insure the safety and avoid the endangerment of all persons and property of itself and others; and comply with any specific safety and security related requirements of the Owner, the Contract, or the Contract Documents.

Subcontractor represents that, for the purposes of the Occupational Safety and Health Act (OSHA) of 1970, including any state counterparts, and including all standards and regulations which have been or shall be promulgated by the governmental authorities which administer such Act, it is an "employer" under the definition contained in such Act and, as an employer, is obligated to observe the requirements of that Act independent of any contractual relationship; and that, with respect to the Work and all activities associated in any manner with the Work or the Project, it will so comply with the requirements of that Act and all other requirements, standards, orders, regulations, or ordinances issued by any authority having jurisdiction over the Work.

8

Subcontractor shall observe and comply with all laws and regulations relating to the shipment, possession, handling, labeling, packaging, storage, use, exposure, discharge, and disposal of any hazardous substance including any laws and regulations relating to record-keeping and publication, posting or communication of hazard information. The Subcontractor must provide both the home office and field office of Contractor with "Material Safety Data Sheets" as required by OSHA for hazardous materials on site. Subcontractor must maintain its own files on site.

The Subcontractor shall report within three (3) days to the Contractor any injury to any of the Subcontractor's employees at the site. Subcontractor shall be held accountable for any fines or penalties assessed against the Contractor as a result of Subcontractor's failure to comply with applicable laws and codes.

Subcontractor shall observe and comply with all environmental protection laws and regulations applicable to the Project site or the Work, including those relating to the use of water, the discharge or disposal of wastes, the control of drainage, and the protection of vegetation, wildlife, habitats, or surroundings. Subcontractor shall observe and comply with any environmental requirements in securing any permits applicable to the performance of the Work.

Subcontractor agrees to defend, indemnify and hold harmless Contractor, its surety, Owner, Architect and any Construction Manager and their agents and employees, from and against any fine, penalty, claim, cost, expense or liability (including attorney's fees) attributable to a violation of any provision of O.S.H.A, or any other municipal, state, or federal, safety requirement relating to Subcontractor's scope of work or work area. Subcontractor has an affirmative duty to maintain the area in which it is working in a condition that is in compliance with all O.S.H.A safety requirements, and to not expose either its employees, the employees of other subcontractors, the Contractor, or the Owner, their agents and representatives, to a dangerous condition as defined in O.S.H.A. Part 1926.

## ARTICLE 12
## LABOR

Subcontractor understands that the project will be performed with union and/or non-union labor. Accordingly, the Subcontractor will be responsible for harmony between its employees and those of the Contractor and other subcontractors. Should Subcontractor's Work hereunder or the work under the Contract be stopped or interfered with by reason of strikes, picketing or other disputes, Subcontractor shall immediately resolve such dispute and terminate all such work stoppage and interference. Any failure by Subcontractor to perform and any delays occasioned by disharmony caused by the employees of the Subcontractor shall entitle Contractor to proceed under the provisions for Default hereunder.

Subcontractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during the progress of the Work. The superintendent shall represent the Subcontractor and all communications given to the Superintendent shall be as binding as if given to the Subcontractor.

## ARTICLE 13
## TERMINATION

If the Contract is terminated without cause or for the convenience of the Owner, this Subcontract shall be deemed terminated for the convenience of the Contractor, and compensation to Subcontractor shall be governed by the applicable termination provisions of the Contract or Contract Documents. In the event of such termination, Contractor shall be liable to Subcontractor for only such amounts that Contractor receives from Owner on Subcontractor's behalf.

In addition to the provisions for termination specified above and under Article 16, Default, Contractor may terminate all or any portion of the Work of this Subcontract, without cause or for the convenience of Contractor, by issuing written notice of such intention to Subcontractor. In such event, Subcontractor shall be paid in accordance with the provisions of this Subcontract relating to progress and final payments for the value of the Work performed up to the date of termination (determined according to the Subcontract schedule of values), less previous payments and any amounts for which Subcontractor may be liable to Contractor, plus an equitable disposition of materials in progress and the reasonable cost of demobilization. Under no circumstances, however, shall the Contractor be liable for anticipated profits on work not performed or materials and equipment not delivered and incorporated in the Work.

## ARTICLE 14
## CHANGES AND EXTENSIONS OF TIME

The Subcontractor shall be bound to the Contractor by the terms of this Agreement and of the Contract Documents between the Owner and Contractor, and shall assume toward the Contractor all the obligations and responsibilities which the Contractor, by those Documents, assumes toward the Owner. Subcontractor shall have the benefit of all rights, remedies and redress against the Owner which the Contractor, by those Documents, has against the Owner, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the Owner and Contractor is inconsistent with any provision of this Agreement, this Agreement shall govern.

If for reasons beyond its control Subcontractor is materially delayed in the progress of the Work under such circumstances as would entitle Contractor to an extension of time or other relief under the Contract, Subcontractor shall be entitled to seek a corresponding extension of time for completion of the Work hereunder; provided that Subcontractor shall have filed with Contractor written claim for such extension that complies with the prerequisites for making a claim under the Contract in sufficient time to permit Contractor to file such a claim against the Owner for an extension under the Contract. Subcontractor shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays or interference except to the extent that the Contract entitles Contractor to compensation therefor and then only to the extent of any amounts that Contractor, on behalf of Subcontractor, recovers from Owner for such delays or interference.

Contractor may, without invalidating the Subcontract or any bonds given hereunder, order additional work, deletions or other modifications to the Work, such changes to be effective only upon written order of Contractor. If such change is made by, or in any manner relates to any action or omission of the Owner or any error, omission or conflict in the Contract Documents, then Subcontractor's entitlement to any adjustment to the Contract Price or the time for completion of the Work shall be limited solely to the extent Contractor receives additional compensation or time from the Owner on subcontractor's behalf. If the provisions of the Contract require the submission of a priced proposal, Subcontractor shall submit its detailed cost proposal (including time impact) for any such change or proposed change, and shall maintain detailed records of costs or savings actually realized as a result of any such change along with any other documentation required by the Contract. If any such changes diminish the Work to be done, they shall not form the basis for a claim by Subcontractor for loss of anticipated profits. If the provisions of the Contract require the submission of a priced proposal, and Subcontractor fails to submit such proposal to Contractor in acceptable form and in sufficient time to allow Contractor to submit such proposal to Owner in accordance with the requirements of the Contract, Subcontractor's entitlement to additional compensation or time shall be deemed waived. Notwithstanding any disagreement or dispute over Subcontractor's entitlement to or the amount of any adjustment to the Contract Price or time, Subcontractor will nevertheless diligently and promptly proceed with the Work and any disputed work pending resolution of the disagreement or the dispute, whether through the Disputes process or otherwise.

The on-site Project Superintendent representing the Contractor shall have the authority to order minor changes in the Work not involving an adjustment in the Contract Sum or extension of Contract Time. All compensable Change Orders or those warranting a time extension must be ordered in writing by an officer of Contractor.

**ARTICLE 15**
**DISPUTES**

In the event of any dispute or claim by Subcontractor hereunder, notice of such claim shall be given to Contractor no later than seven (7) days following the event, decision or other action out of which the claim arises, or such lesser period as may be required under the Contract Documents. Such notice shall describe such dispute or claim in detail. If Subcontractor fails to provide such notice, the claim or dispute and all monetary and other relief associated therewith shall be deemed waived and abandoned by Subcontractor.

In case of any dispute between Contractor and Subcontractor, in any way relating to or arising from any act or omission of the Owner or involving the adequacy or integrity of the Contract Documents, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, tribunal, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to the Owner any required communications or documentation. Contractor will, at its option, present to Owner, in Contractor's name, or authorize Subcontractor to present to Owner in Contractor's name, Subcontractor's claims and answer the Owner's claims involving Subcontractor's work. Contractor will further invoke on behalf of Subcontractor, or allow Subcontractor to invoke, those provisions in the Contract Documents for resolution of disputes. Nothing herein shall require Contractor to certify a claim under a government contract when Contractor cannot do so in good faith. If any such dispute is prosecuted or defended by Contractor, Subcontractor, at its own expense, agrees to furnish all documents, statements, witnesses, and other information required by Contractor and to pay or reimburse Contractor for all costs incurred by Contractor in connection with the dispute, including attorneys' fees.

To the extent not resolved under the immediately preceding paragraph, any dispute between Contractor and Subcontractor shall, at Contractor's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If Contractor elects to arbitrate, then the arbitration shall be conducted in Suffolk County, New York. The foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction. Upon its request, Contractor shall be entitled to consolidation or joinder of any arbitration involving Subcontractor with related arbitrations involving other parties. The award rendered by the arbitrators shall be final and judgement may be entered in accordance with applicable law in any court of competent jurisdiction. If Contractor does not opt for arbitration, then any litigation shall be brought only in a state or federal court in Suffolk County, New York, which courts shall be the exclusive venues for litigation, unless Contractor is or becomes a party to litigation in another venue or jurisdiction that arises in whole or in part out of the Subcontract or the Work, in which event Contractor may in its sole discretion elect to join Subcontractor as a party in such other litigation. CONTRACTOR AND SUBCONTRACTOR HEREBY WAIVE THEIR RIGHTS TO TRIAL BY JURY. If Contractor notifies Subcontractor that Contractor contends any arbitration or lawsuit involves a controversy within the scope of the immediately preceding paragraph, and the arbitration or lawsuit is not consolidated with the proceeding involving the Owner, the arbitration or lawsuit shall be stayed until the proceeding involving the Owner have been resolved.

Subcontractor shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of any delays, disputes or interference, regardless of cause, except to the extent that the Contract entitles Contractor to compensation therefor and then only to the extent of any amounts that Contractor, on behalf of Subcontractor, recovers from Owner for such delays or interference.

The pendency of any claim or dispute shall not suspend or stay in any manner the obligations under this Subcontract and Subcontractor shall continue the Work and any disputed work without interruption.

Subcontractor's sureties shall be bound by the provisions of this Article to the same extent Subcontractor is bound.

## ARTICLE 16
## DEFAULT

Should Subcontractor at any time: (a) fail to supply the labor, materials, equipment, supervision, and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness and diligence required hereunder; (b) cause stoppage or delay of or interference with the Project work; (c) become insolvent; or, (d) fail in the performance or observance of any of the covenants, conditions or other terms of this Subcontract, then in any such event, each of which shall independently constitute a default hereunder by Subcontractor, Contractor shall, after giving Subcontractor prior notice of default and forty-eight (48) hours within which to cure, have the right to exercise one or more of the following remedies:

1) Require that the Subcontractor utilize, at its own expense, overtime labor, including weekend work, and additional shifts as necessary to overcome the consequence of any delay attributable to Subcontractor's default;

2) Remedy the default by whatever means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others, utilizing any materials and equipment previously purchased or brought to project site by Subcontractor, and deducting the cost thereof, plus an allowance for administrative burden equal to fifteen percent (15%) of such costs, from any monies due or to become due to Subcontractor hereunder;

3) Terminate Subcontractor's performance under this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work, and all materials, equipment, facilities, plant, tools, scaffolds, and appliances of the Subcontractor relating to the Work, for the purposes of completing the Work and securing to contractor the payment of its costs, plus an allowance for administrative burden equal to fifteen percent (15%) of such costs, and other damages under the Subcontract and for breach thereof, it being intended that Contractor shall, for the stated purposes, be the assignee of and have a security interest in the property described above to the extent located on the Project site.

4) Recover from the Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees suffered or incurred by Contractor by reason or as a result of Subcontractor's default.

The foregoing remedies shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or under the Contract Documents, or now or hereafter existing at law or in equity.

After completion of the Work by the exercise of any one or more of the above remedies and acceptance of Work by Owner and payment made therefor, Contractor shall promptly pay Subcontractor any balance of the Subcontract Price. In the event a termination of Subcontractor's performance under this Subcontract for default is subsequently determined by a court of competent jurisdiction to be unjustified, then such termination shall be deemed to have been a termination by Contractor without cause under the provisions of Article 13, Termination, and the compensation due Subcontractor, if any, shall be determined accordingly.

Except as limited by this Subcontract, Subcontractor shall have the rights and remedies available at law or in equity for a breach of this Subcontract by Contractor. Any default by Contractor shall be deemed waived unless Subcontractor shall have given Contractor written notice thereof within seven (7) days after the occurrence of such default. Subcontractor shall not be entitled to stop the Work on account of a default by Contractor, unless such default shall have continued for more than seven (7) days after Contractor's receipt of written notice of such default from Subcontractor.

## ARTICLE 17
## MISCELLANEOUS

### 17.1 SUBMITTALS:

Subcontractor shall prepare and submit to Contractor a minimum of eight (8) copies of all necessary shop and erection drawings, plans, and diagrams; furnish all necessary samples, catalogue cuts, certifications, laboratory and inspection reports and engineering calculations; and perform specified tests and erect required mock-ups, all in sufficient time to permit the orderly and timely prosecution of the Work; and prepare and submit any as-built drawings, operation and maintenance manuals, warranties, and all other documentation required under the Contract Documents.

In the instance of specifically prepared fabrication drawings, the submittal shall consist of one reproducible drawing or sepia, and eight prints.

Subcontractor shall promptly submit shop drawings and samples as required in order to perform his work efficiently, expeditiously and in a manner that will not cause delay in the progress of the Work of the Contractor or other Subcontractors. Unless otherwise stated all shop drawings and submittals must be prepared prior to the later of fourteen (14) calendar days after subcontractor receives contract, or the date set forth in the Statement of Work. Should subcontractor fail to diligently prepare submittals, contractor will prepare submittals and backcharge Subcontractor accordingly.

As-built documents and data shall be maintained and recorded by the Subcontractor as applicable to his work and shall be updated monthly. Current as-builts shall be made available to Contractor for review concurrently with the Subcontractor's request for progress payment.

Approval of any drawing or submittal shall not relieve the Subcontractor of its obligation to perform the work in a manner necessary to produce the result required by the Contract Documents.

If it is found by the General Contractor that the Subcontractor has failed to release any items into production or has failed to provide material that is needed on the jobsite and is causing a delay on the project, the General Contractor has the right to procure the items directly, at any cost, and backcharge the cost of the item plus General Contractor overhead expenses to the Subcontractor. Three (3) days written notice will be provided to the Subcontractor before item is procured.

## 17.2 SITE VERIFICATION:

Subcontractor shall verify all control lines and benchmarks and notify Contractor of any discrepancy before proceeding with the Work; be responsible for all required layout, positioning and placement of all elements of the Work; familiarize itself with all Contract Documents and shop, fabrication, and installation details of other trades and divisions of work, particularly those affecting or affected by the Work under this Subcontract; and verify all dimensions and take all measurements for any portion of the Work which is dependent for size or installation upon coordination or fit with other work or conditions without reliance on representations or indications of Contractor, the Contract Documents, or other Subcontractor.

The quantity and scope of the Work required herein is directed by the whole of the Contract Documents, and Subcontractor acknowledges his obligation under this Agreement to coordinate his Work with materials and equipment to be furnished by others to ensure a completely compatible system. Accordingly, the Subcontractor shall review the fabrication drawings and the product data of all items requiring integration and compatibility with its Work. The Subcontractor shall review the surfaces provided by others to which his Work is to be applied, and shall notify the Contractor of any known defect or condition detrimental to proper procedures prior to commencement of the Work. Otherwise, it shall be deemed that the Subcontractor has accepted the conditions of such surfaces and shall be liable for all consequences resulting therefrom.

The Subcontractor represents that it has investigated, examined, inspected, and thoroughly familiarized itself with the Contract Documents, the Site, and adjoining premises, in connection with which the Work covered by this Agreement is to be performed, and that it has thoroughly informed itself as to any difficulties in connection therewith, and that the Contractor has made no representation of any kind or nature with references thereto not contained in this Agreement. Commencement of this Work, or any portion thereof, by the Subcontractor shall be conclusive evidence that the jobsite, or that part of the jobsite on which such Work is being installed, is in proper condition for the reception and installation of the Work.

## 17.3 WARRANTY:

Subcontractor warrants that all materials and equipment furnished and incorporated in the Project shall be new unless otherwise specified, and that all Work under this Subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All work not conforming to these standards may be considered defective.

Subcontractor agrees to make good, to the satisfaction of the Owner, any portion or portions of the Work which prove defective within one year, or such longer period as may be specified in the Contract Documents, from the date of acceptance by the Owner.

The warranty provided in this Paragraph shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

## 17.4 DILIGENT PROSECUTION OF WORK

Subcontractor agrees that if he should neglect to prosecute the Work diligently and properly or fails to perform any provisions of this Subcontract, the Contractor, after 48 hours written notice to the Subcontractor may, without prejudice to any other remedy he may have, make good such deficiencies and may deduct the costs thereof from the payments then or thereafter due the Subcontractor.

Subcontractor agrees that if he should prosecute the Work in a manner resulting in a condition affecting project safety, Contractor has the right, but not the obligation, to immediately remedy that condition, without notice, and deduct the costs thereof from the payments then or thereafter due the Subcontractor.

## 17.5 SCHEDULING AND COORDINATION WITH OTHER TRADES

Subcontractor shall cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's Work and shall participate in the preparation of coordinated drawings in areas of congestion as required by the Contract Documents, specifically noting and advising the Contractor of any such interference.

Subcontractor shall cooperate with the Contractor in scheduling and performing his Work to avoid conflict or inter-ference with the work of others. If required, Subcontractor shall work with contractor in formulation and monthly update of project CPM schedule. Subcontractor shall schedule manpower and material deliveries in accordance with CPM, and maintain levels of production required by said schedule.

Subcontractor shall be liable for any damages to adjacent surfaces caused by his Work, including damages resulting from Subcontractor's cleaning of such surfaces.

Subcontractor shall be liable for the repair of any damage to fireproofing or adjacent trades resulting from the performance of the Work.

Subcontractor shall perform all cutting, fitting, patching, sleeving, grouting, and sealing of his Work, that may be required to fit in to, receive, or be received by the work of others as shown, or is reasonably implied by either: the Contract Documents; the rules and regulations, codes and requirements of all regulatory agencies having jurisdiction over the project; or as required or reasonably implied to achieve consistency and compatibility with the design of elements being penetrated.

All layout for penetrations required for installation of Subcontractor's work must be presented in the form of coordination drawings submitted to the Contractor in conjunction with the Submittal requirements of Article 17.1 of this subcontract.

Anchoring devices required for the Work to be built into concrete or masonry shall be furnished and installed by the Subcontractor unless otherwise agreed by the parties hereto.

## 17.6 TAXES

Subcontractor shall pay, or cause to be paid, when due, all taxes of every kind now or hereafter imposed, levied or assessed by any governmental authority with respect to the Work, including taxes for labor, materials, and equipment utilized in connection therewith and expressly including all sales, use, personal property, excise and payroll taxes. Subcontractor, upon request of Contractor, shall furnish satisfactory evidence of such payments.

17.7 NOTICE

All written notices provided for in this Subcontract shall be deemed given only when: Personally delivered to an Officer of the Corporation; Delivered by telegram or electronic facsimile transmission with written confirmation copy following; Mailed postage prepaid; or, Dispatched prepaid by courier or delivery service to the parties at the addresses set forth on Page 1 of this Subcontract.

17.8 GENERAL PROVISIONS

a) As regards the subject matter hereof, this writing, including documents incorporated herein by reference, constitutes the entire agreement between the parties.

b) This Subcontract shall not be modified or amended in any way except (i) by writing executed by both parties, or (ii) as otherwise expressly provided herein.

c) The failure of the Contractor to insist in any one or more instances upon a strict compliance with any provision of this Subcontract, or to exercise any option herein conferred, including but not limited to provisions relating to insurance, bonds and default, shall not be construed as a waiver or relinquishment of the right of Contractor thereafter to require compliance with such provision and such provision shall remain in full force and effect.

d) All matters relating to the validity, performance, or interpretation of this Subcontract shall be governed by the law of the State of New York.

e) If any of the provisions of this Subcontract shall contravene or be invalid under the laws of the jurisdiction where it is to be performed, such contravention or invalidity shall not invalidate the whole Subcontract or any other provision thereof, but the contravening or invalid provision or portion of such provision shall be deemed amended to conform with the governing law in such a manner as to most nearly reflect the intent of the parties.

f) Subcontractor is to provide his own office facilities, storage facilities and telephone. Subcontractor will maintain, and remove from the project site on completion of Work, all his temporary offices, structures for the use of his employees, sheds and storage facilities, complete with all necessary utilities, telephone, etc. Storage areas for use of Subcontractor shall be designated by the Contractor, and no materials or equipment shall be stored by the Subcontractor except in areas approved by the Contractor. Such storage areas shall be maintained in an orderly condition by the Subcontractor. Contractor has no affirmative duty or obligation to provide storage within the new construction. However, it may approve said storage if, at its sole discretion, said storage can be demonstrated to have no impact on other trades.

g) Subcontractor is to provide the Contractor with daily reports, and to submit in duplicate daily on form directed by the Contractor. Failure to submit completed reports on a daily basis may, at the Contractor's sole discretion, result in a backcharge being assessed against any amounts due or becoming due to Subcontractor.

16

h) If Applicable, Subcontractor is to provide weekly certified payroll reports. These reports are required by Davis-Bacon Act and forms to be provided to Subcontractor must be used. Submit in duplicate to the Contractor weekly. No payment will be made unless payrolls are up to date. Failure to submit timely, accurate, reports in accordance with the requirements of the Davis-Bacon Act shall be considered a material breach of this Subcontract and may, at the Contractor's sole discretion, result in Subcontractor's Default in accordance with Article 16 set forth herein.

i) All Labor Standards Clauses and Wage Rates of the Contract are specifically part of this contract as though they were attached hereto. See Rider C. This subcontractor must comply with all requirements of these provisions. This Subcontractor shall include these clauses in any lower tier subcontracts. Contractor may withhold or cause to be withheld from the Subcontractor on any Federally assisted contract subject to Davis-Bacon prevailing wage requirements, accrued payments as may be considered necessary to pay employees of Subcontractor the full amount of wages required by the Contract. Contractor may take any action as may be deemed necessary, and in accordance with Federal regulations, including the suspension of any further payment or guarantee of funds, determined to be necessary to satisfy any liabilities of such Subcontractor for unpaid wages.

j) If required by the Contract Documents, Subcontractor is to provide written statement that he is a Small Business Concern.

k) Unless otherwise noted, Subcontractor shall be obligated to attend all job site or other project meetings however frequent. Attendance shall be by an officer or principal of the Subcontractor. Failure to attend project meetings as required may, at the Contractor's sole discretion, result in a backcharge being assessed against any amounts due or becoming due to Subcontractor.

l) J.KOKOLAKIS CONTRACTING, INC., and its authorized delegates have unrestricted access to all temporary services provided by this subcontractor.

m) If the Buy American Act (41 USC 10) is applicable to the General Contract, it is specifically incorporated into this Subcontract.

n) The Subcontractor shall at all times keep the Site free from accumulation of waste materials or rubbish caused by its operations. At the completion of each day's Work, Subcontractor shall remove and dispose of all debris in accordance with the Statement of Work. Subcontractor agrees that if the accumulation of debris should reach a level resulting in a condition affecting project safety, Contractor has the right, but not the obligation, to immediately remedy that condition, without notice, and deduct the costs thereof from the payments then or thereafter due the Subcontractor.

o)  Unless otherwise set forth in this Subcontract, Subcontractor is responsible for all delivery, acceptance, unloading, hoisting, and distribution of the material and equipment required for the performance of the Work. The performance of any of these duties by the Contractor in the absence of or upon the request of the Subcontractor shall not be construed as a waiver or relinquishment of the right of Contractor thereafter to require compliance with such provision and such provision shall remain in full force and effect. Nor shall such action by the Contractor be construed as an acceptance of responsibility or accountability for said material and equipment. Subcontractor agrees to hold Contractor harmless for any and all damage or loss to materials or equipment accepted and unloaded by the Contractor on Subcontractor's behalf.

p)  Additional contract clauses are included under Rider D.

IN WITNESS WHEREOF, this Agreement has been executed this ___1___ day of __June____, 20_04_ A.D.

J. KOKOLAKIS CONTRACTING, INC.

BY: _____

PRINT NAME: _NICK LEO_____

TITLE: ____UP_____

DATE: ___9/13/04_____

(CORPORATE SEAL)

MATHUSEK SPORTS FLOORS

BY: _NWMathusek_____

PRINT NAME: _H Warren Mathusek_

TITLE: _Pres._____

DATE: _6/1/2004_____

(CORPORATE SEAL)

STATE: __New York_____

COUNTY: __Suffolk_____

Sworn to me before this ___13____

day of _September___, 20_04_ A.D.

_Kathleen M. Gallagher_____
    NOTARY PUBLIC

My Commission expires: _11/19/05_

(NOTARY SEAL)

KATHLEEN M. GALLAGHER
Notary Public, State of New York
No. 01GA6066631
Qualified in Suffolk County
Commission Expires November 19, 20_05_

STATE: _New Jersey_____

COUNTY: _Passaic_____

Sworn to me before this ___1st___

day of _June____, 20_04_ A.D.

_____
    NOTARY PUBLIC

My commission expires:
    LINDA ZUROFF
    Notary Public State of New Jersey
(NOTARY My Commission Expires Sept. 26, 2004

19

## RIDER A
## SCOPE OF WORK

IT IS THE INTENT OF THIS SUBCONTRACT TO PROVIDE FOR ALL SUPERVISION, LABOR, MATERIAL, TOOLS, EQUIPMENT, FEES, CERTIFICATIONS, INSPECTIONS, LAYOUT, ENGINEERING, INSURANCES AND OTHER SERVICES REQUIRED FOR THE COMPLETE INSTALLATION OF ALL RESILIENT ATHLETIC FLOORING AND SHEET RUBBER FLOORING SYSTEMS, INCLUSIVE OF ALL BASE, ACCESSORIES AND APPURTENANCES, AS SHOWN, CALLED FOR, SCHEDULED OR IMPLIED, AND IN FULL ACCORDANCE WITH THE CONTRACT DRAWINGS AND SPECIFICATION SECTIONS 01030, 01330, 01420, 01451, 09000, 09620, 09650 AND 09915, INCLUDING AMENDMENTS 1 THROUGH 16, WITH NO EXCEPTIONS. ALL WORK DEPICTED ON THE CONTRACT DRAWINGS AS OPTION OP03, OP06, OP07 AND OP08 IS SPECIFICALLY INCLUDED UNDER THE TERMS OF THIS CONTRACT. ADDITIONALLY, THE SUBCONTRACTOR DOES AGREE THAT THE FOLLOWING ITEMS ARE TO BE PERFORMED AS PART OF ITS CONTRACTUAL OBLIGATION. ITEMS THAT ARE NOT SPECIFICALLY LISTED, BUT ARE WITHIN THE SCOPE OF WORK, SHALL REMAIN THE RESPONSIBILITY OF THE SUBCONTRACTOR UNDER THE TERMS OF THIS CONTRACT.

1. SUBCONTRACTOR HAS BEEN PROVIDED WITH A FULL SET OF CONTRACT DRAWINGS, AMENDMENTS AND OPTIONS AND IS RESPONSIBLE FOR COORDINATING THE WORK TO BE PERFORMED UNDER THIS CONTRACT WITH ALL APPLICABLE SITE, ARCHITECTURAL, STRUCTURAL, HVAC, PLUMBING AND ELECTRICAL DETAILS FOR NEW AND EXISTING WORK.

2. SUBCONTRACTOR IS RESPONSIBLE FOR RECEIVING AND UNLOADING ALL MATERIALS REQUIRED BY THIS SUBCONTRACT FOR THE COMPLETION OF THE WORK, AND DISTRIBUTION OF SAME TO THE WORK AREA. MATERIALS ARE TO BE PROTECTED AT ALL TIMES.

3. SUBCONTRACTOR SHALL FURNISH ALL EQUIPMENT AS REQUIRED TO COMPLETE THE WORK. EQUIPMENT AND SAFETY EQUIPMENT MUST BE O.S.H.A. APPROVED AND PROVIDED IN ACCORDANCE WITH GUIDELINES AS OUTLINED IN THE USACE SAFETY AND HEALTH MANUAL EM-385-1, WITH NO EXCEPTIONS.

4. SUBCONTRACTOR SHALL PROVIDE TIMELY SUBMISSION OF ALL PRE-PROJECT PAPERWORK, INCLUDING BUT NOT LIMITED TO INSURANCES, BONDS, HEALTH AND SAFETY PLANS.

5. SUBCONTRACTOR SHALL PROVIDE ALL NECESSARY SUPERVISION AND PROJECT MANAGEMENT. SAFETY MEASURES SHALL BE TAKEN AS REQUIRED TO PROVIDE SAFE, QUALITY WORK.

6. SUBCONTRACTOR SHALL SUBMIT FOR APPROVAL, ALL SUBMITTALS, SAMPLES, TEST REPORTS, SHOP DRAWINGS, CALCULATIONS, DETAILS, CERTIFICATIONS AND SHOP DRAWINGS AS REQUIRED BY THE SPECIFICATIONS.

7.  SUBCONTRACTOR SHALL FURNISH AND INSTALL ALL RESILIENT ATHLETIC FLOORING SYSTEMS AND SHEET RUBBER FLOORING SYSTEMS IN SCHEDULED ROOMS AND AREAS. WRESTLING MAT UNDERLAYMENT IN ROOMS Y221, Y223, Y224, Z220 AND Z227 IS SPECIFICALLY EXCLUDED FROM THIS SUBCONTRACT.

8.  SUBCONTRACTOR SHALL FURNISH AND INSTALL ALL COMPONENTS, ACCESSORIES AND APPURTENANCES REQUIRED FOR COMPLETE, COMPLIANT FLOORING SYSTEMS.

9.  SUBCONTRACTOR SHALL FURNISH AND INSTALL TWO LAYERS OF FLOORING (96.2C BASELAST AND 96.2A SPORTS IMPACT) AT DPE WEIGHT ROOM Y320.

10. SUBCONTRACTOR SHALL FURNISH AND INSTALL ALL VINYL AND RUBBER BASE IN ALL AREAS AND ROOMS SCHEDULED TO RECEIVE FLOORING UNDER THIS AGREEMENT.

11. SUBCONTRACTOR SHALL FURNISH AND INSTALL ALL FLOORING ACCESSORIES, INCLUDING EDGE STRIPS, TRANSITION STRIPS, AND REDUCERS AS REQUIRED TO INTERFACE WITH EXISTING CONDITIONS OR THE WORK OF OTHER TRADES.

12. SUBCONTRACTOR SHALL FIELD MEASURE FOR ALL MATERIALS, AND COORDINATE ALL FLOORING INSTALLATIONS. ALL LAYOUTS, PATTERNS AND COLOR SCHEMES SHALL BE IN ACCORDANCE WITH THE CONTRACT DOCUMENTS.

13.

14.

_Art Gureck, Jr._          19-AUG-04

**Art Gureck, Jr.**
**Kokolakis Contracting**

15. SUBCONTRACTOR SHALL FURNISH AND INSTALL PROTECTION OVER FINISHED FLOORING AS CALLED FOR IN THE SPECIFICATIONS.

16. SUBCONTRACTOR TO PROVIDE FOR ALL WARRANTIES AND GUARANTEES AS INDICATED IN THE CONTRACT DOCUMENTS.

17. SUBCONTRACTOR SHALL BE LIABLE FOR ANY OVERTIME OR SHIFT DIFFERENTIALS THAT MAY BE REQUIRED DUE TO THIS SUBCONTRACTOR'S FAILURE TO MAINTAIN THE PROJECT SCHEDULE BY NOT PROVIDING ADEQUATE MANPOWER OR SUPPLIES TO SATISFY SCHEDULED DATES.

21

18. SUBCONTRACTOR SHALL PROVIDE FOR DAILY CLEANUP OF THIS SUBCONTRACTOR'S MATERIALS. DUMPSTERS ARE TO BE PROVIDED BY J. KOKOLAKIS CONTRACTING, INC.

19. SUBCONTRACTOR SHALL PROVIDE FULL COORDINATION WITH J. KOKOLAKIS CONTRACTING, INC.'S FORCES AND ALL OTHER SUBCONTRACTORS AS REQUIRED TO COMPLETE WORK REFERENCED UNDER THE TERMS OF THIS CONTRACT.

20. SUBCONTRACTOR SHALL MAKE EVERY EFFORT TO PROTECT ALL ADJACENT WORK AND BUILDING SYSTEMS FROM DAMAGE DURING THE PERFORMANCE OF WORK UNDER THIS CONTRACT. ANY COST ASSOCIATED WITH THE REPAIR OF DAMAGE TO ITEMS OF WORK SCHEDULED OR INDICATED TO REMAIN WILL BE BORNE BY THIS SUBCONTRACTOR.

21. SUBCONTRACTOR SHALL PROVIDE ALL TESTING, ADJUSTING, COMMISSIONING, DEMONSTRATION, TRAINING, OPERATING AND MAINTENANCE SERVICES AND MANUALS AS REQUIRED BY THE CONTRACT DOCUMENTS.

22. SUBCONTRACTOR SHALL FURNISH AND DELIVER EXTRA MATERIAL STOCK (TAKEN FROM THE SAME RUNS AS THE MATERIAL THAT IS INSTALLED) IN QUANTITIES CALLED FOR IN THE SPECIFICATIONS.

23. ANY WORK REJECTED BY THE USACE OR J. KOKOLAKIS CONTRACTING, INC. SHALL BE REMOVED AND REINSTALLED AT NO ADDITIONAL COST.

24. NO BOND REQUIRED.

## RIDER B
## REQUIRED INSURANCE

Certificates of insurance, including copies of policy endorsements listed below, evidencing required coverage's, shall be delivered to Contractor prior to the commencement of any work (sample certificates attached).

| TYPE OF COVERAGE | AMOUNT OF COVERAGE |
|---|---|
| A.  WORKER'S COMPENSATION – and Occupational Disease Coverage in accordance with the laws of the State within whose jurisdiction the work is performed.<br><br>• Coverage to include all employees, agents, officers, partners, and proprietors/owners of Subcontractor.<br><br>• The certificate should specify that the insurance company's A.M. Best Rating is at least A-/VIII.<br><br>• If the services of a leasing company are used to insure Subcontractor's workers' compensation exposure, the following documents must be delivered to Contractor before any work can be performed:<br>    A. One certificate documenting workers' compensation insurance for Subcontractor's employees on Contractor's job sites covered through the leasing company.<br>    B. A second certificate of insurance evidencing that the Subcontractor has purchased its own separate workers' compensation insurance policy for any employees not covered by the leasing company's insurance.  It is imperative that this second policy be insured through the same insurance company as the leasing company and that the second policy has a different policy number from that of the leasing company.<br>    C. A declaration sheet (the cover page of the insurance policy) from the Subcontractor's own policy. | Workers Compensation:  Statutory |

23

- The workers' compensation policy shall be amended to include a 30-day cancellation notice provision in lieu of the standard 10-day cancellation notice provision.
- Workers' compensation carrier shall waive subrogation against Contractor, Owner, Architect any Construction Manager and their subsidiaries, affiliated and successor companies, officers, directors, agents, servants, employees, divisions, partners and shareholders.

EMPLOYER'S LIABILITY

B. COMMERCIAL GENERAL LIABILITY – with the following minimum coverage:

- Coverage for all operations of the Subcontractor related to the Work
- Occurrence form not modified
- Subsidence, no endorsements limiting coverage
- Contractual liability coverage included
- The Certificate of Insurance must state additional named insured's required by the Subcontract and Contract Documents
- The Additional Insured status will be provided to Contractor on a project specific basis.
- The Certificate of Insurance must clearly state that the Subcontractor's insurance is "primary and noncontributory" over Contractor's insurance.
- The Subcontractor and its insurers hereby waive all rights to make claims against Contractor, Owner, other Subcontractors, Construction Manager, and Architect and their agents or employees
- The Certificate of Insurance should specifically state that the Subcontractor's insurance company's A.M. Best Rating is at least A-/VIII.

Employer's Liability:
$1,000,000 each accident
$1,000,000 each disease
$1,000,000 each employee/person

Commercial General Liability:

1,000,000.  General Aggregate Limit (other than Products/Completed Operations)

$1,000,000.  Products/Completed Operations
        Aggregate Limit
$1,000,000.  Bodily Injury (Ea. Occurrence)
$1,000,000.  Property Damage (Ea. Occurrence)
$1,000,000.  Personal Injury & Advertising Injury Limit
$    50,000.  Fire Damage Limit (any one Fire)

There shall be no endorsements limiting coverage for explosion, collapse, or underground damage, Blanket contractual liability, or Broad Form property damage coverage.

There shall be no limitation on the limits available to the additional insured's. Nor shall there be any limitation or exclusions as respects the additional insured coverage for claims involving Bodily Injury of a Subcontractor's employees or of any other third party.

C.  COMPREHENSIVE AUTO LIABILITY – covering any automobile including hired and non-owned autos

- The certificate of insurance must reflect that the auto liability insurance insures any vehicle driven by the Subcontractor and its employees.
- The certificate of insurance must specify that the Subcontractor's insurance company's A.M. Best rating is at least A-/VIII.

D.  UMBRELLA LIABILITY – primary for all coverage's

- The certificate of insurance must state the additional named insured's required by the Subcontract and Contract Documents.

Comprehensive Auto Liability:

$1,000,000  Combined Single Limit

Umbrella Liability:

$5,000,000 excess over Employer's Liability, ,Commercial General Liability and Comprehensive Auto Liability

# RIDER C
# LABOR STANDARDS

Davis-Bacon Act (FAR 52.222-06)

(A)　All laborers and mechanics employed or working upon the site of the work (or under the United States Housing act of 1937 or under the Housing Act of 1949 in the construction or development of the project), will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics.  Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2)of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (d) of this clause; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period.  Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed without regard to skill, except as provided in the clause entitled "Apprentices and Trainees."  Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein:  Provided.  That the employer's payroll records accurately set forth the time spent in each classification in which work is performed.  The wage determination (including any additional classification and wage rates conformed under paragraph (b) of this clause) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(B )　(1)　The Contracting Officer shall require that any class of laborers or mechanics which is not listed in the wage determination and which is to be employed under the Contract shall be classified in conformance with the wage determination.  The Contracting Officer shall approve an additional classification and wage rate and fringe benefits therefore only when the following criteria have been met:

　　　(I)　The work to be performed by the classification requested is not performed by a classification in the wage determination; and

　　　(ii)　The classification is utilized in the area by the construction industry; and

　　　(iii)　The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination

　　　(2)　If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and The Contracting Officer agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by The Contracting Officer to the Administrator of the Wage and Hour Division.  Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210.  The Administrator of the Wage and Hour Division, or an authorized representative, will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise The Contracting Officer or will notify The Contracting Officer within the 30-day period that additional time is necessary.

　　　(3)　In the event the Contractor, the laborers or mechanics to be employed in the classification or their representatives and The Contracting Officer, to the Administrator for determination.  The Administrator of the Wage and Hour Division, or an authorized representative, will issue a determination within 30 days of receipt and so advise The Contracting Officer or will notify The Contracting Officer within the 30-day period that additional time is necessary.

　　　(4)　The wage rate (including fringe benefits where appropriate) determined pursuant to subparagraphs (b)(2) or (b)(3) of this clause, shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

(C)　Whenever the minimum wage rate prescribed in the Contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(D)     If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonable anticipated in providing bona fide fringe benefits under a plan or program. Provided, that the Secretary of Labor has found, upon the written request of the Contractor, that applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

(E)     Paragraphs (a) through (d) of the clause shall apply to this Contract to the extent that it is (1) a prime Contract subject to the Davis-Bacon Act, or (2) a subcontract also subject to the Davis-Bacon Act under such prime Contract.

Apprentices and Trainees. (FAR 52.222-09)

(A)     Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training, or with a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated above shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a Contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. in the event the Bureau of Apprenticeship and Training, or a State Apprenticeship Agency recognized by the Bureau, withdraws approval of an apprenticeship program, the Contractor will no longer be permitted to utilize apprentices at less than applicable predetermined rate for the work performed until an acceptable program is approved.

(B)     Trainees. Except as provided in 29 CFR 5.16 trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination unless the Administrator of the Wage and Hour Division determines that there is a training program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for trainees. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination of the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program the Contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(C)     Equal Employment opportunity. The utilization of apprentices, trainees and journeymen under this part shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Par 30.

<u>Payrolls and Basic Records (FAR 52.22-08)</u>

(A) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under paragraph (d) of the clause entitled "Davis-Bacon Act" that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-Bacon Act, the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable that the plan or program is financially responsible and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

(B) (1) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to The Contracting Officer. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under paragraphs (a) of this clause. The information may be submitted in any form desired. Optional Form WH-347 is available for this purpose and may be purchased from the Superintendent of Documents, Government Printing Office. The Contractor is responsible for the submission of copies of payrolls by all subcontractors.

(C) Each payroll submitted shall be accompanied by a "Statement of Compliance", signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify the following:
(I)That the payroll for the payroll period contains the information required to be maintained under paragraph (a) of this clause entitled "Payrolls and Basic Records" and that such information is correct and complete;
(ii)That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in Regulations, 29 CFR Part 3.
(iii)That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(D) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by paragraph (b)(2) of this clause.

(E) The falsification of any of the above certifications may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Section 231 of Title 31 of the United States Code.

(F) The Contractor or subcontractor shall make the records required under paragraph (a) of this clause available for inspection, copying, or transcription by the Contracting Officer or the Department of Labor or their authorized representatives. The Contractor and subcontractors shall permit such representatives to interview employees during working hours on the job. If the Contractor fails to submit the required records or to make them available, The Contracting Officer may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment, advance or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

<u>Compliance with Copeland Act Requirement (FAR 52.222-10)</u>

The Contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this contract.

## Withholding of Funds (FAR 52.222-07)

The Contracting Officer shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this contract or any other Federal contract with the same Prime Contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics including apprentices, trainees, and helpers employed by the contractor or any subcontractor the full amount of wages require by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the wages required by the contract, The Contracting Officer may, after written notice to the Prime Contractor, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have cease.

## Subcontracts (Labor Standards) (FAR 52.222-11)

The Contractor or subcontractor shall insert in any subcontracts the clauses hereof entitled "Davis-Bacon Act," "Contract Work Hours and Safety Standards Act," "Apprentices and Trainees," "Payrolls and Basic Records," "Compliance with Copeland Act Requirements," "Withholding," "Subcontracts," "Contract Termination-Debarment," "Disputes Concerning Labor Standards," "Compliance with Davis-Bacon and Related Act Requirements," and Certification of Eligibility," and such other clauses as The Contracting Officer may by appropriate instructions require, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The Prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with all contract clauses cited above.

(1)     Within 14 days after award of the Contract, the Contractor shall deliver to The Contracting Officer a completed Statement and Acknowledgment Form (SF 1413) for each subcontract, including the subcontractor's signed and dated acknowledgment that the clauses set forth in paragraph (a) of this clause have been included in the subcontract.

(2)     Within 14 days after the award of any subsequently awarded subcontract the Contractor shall deliver to The Contracting Officer an updated completed SF 1413 for such additional subcontracts.

## Contract Termination; Debarment (FAR 52.222-12)

A breach of the contract clauses entitled "Davis-Bacon Act," "Contract Work Hours and Safety Standards Act," "Apprentices and Trainees," "Payrolls and Basic Records," "Compliance with Copeland Act Requirements," "Subcontracts," "Compliance with Davis-Bacon and Related Act Requirements," and "Certification of Eligibility," may be grounds for termination of the contract, and for debarment as a Contractor and a subcontractor as provided in 29 Cfr 5.12.

## Disputes concerning Labor Standards (FAR 52.222-14)

Disputes arising out of the labor standards provisions of this contract shall not be subject tot he general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6 and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and The Contracting Agency, the U.S. Department of Labor, or the employees or their representatives.

## Compliance with Davis-Bacon and Related Act Requirements (FAR 52.222-13)

All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this contract.

## Certification of Eligibility (FAR 52.222-15)

(A)     By entering into this contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis Bacon Act or 29 CFR 5.12 (a)(1).

# RIDER D
## ADDITIONAL REQUIREMENTS

As per our contract agreement with the Owner, we are required to include the terms of the following clauses in every subcontract agreement. The Subcontractors shall follow the same requirements with their subcontractors, including attaching this RIDER D to each subcontract agreement.

## 1.12 AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (FAR 52.222-35) (APR 1984)
(A) Definitions:

"Appropriate office of the State employment service system," as used in this clause, means the local office of the Federal - State national system of public employment offices assigned to serve the area where the employment opening is to be filled, including the District of Columbia, Guam, Puerto Rico, Virgin Islands, American Samoa, and the Trust Territory of the Pacific Islands. "Openings that the Contractor proposes to fill from within its own organization," as used in this clause, means employment openings for which no one outside the Contractor's organization (including any affiliates, subsidiaries, and the parent companies) will be considered and includes any openings that the contractor proposes to fill from regularly established "recall" lists. "Openings that the contractor proposes to fill under a customary and traditional employer-union hiring arrangement," as used in this clause, means employment openings that the contractor proposes to fill from union halls, under their customary and traditional employer-union hiring relationship.

"Suitable employment openings," as used in this clause--
- (1)    Includes, but is not limited to, openings that occur in jobs categorized as--
  - (I)   Production and non-production
  - (ii)  Plant and office
  - (iii) Laborers and mechanics
  - (iv)  Supervisory and non-supervisory
  - (v)   Technical; and
  - (vi)  Executive administrative and professional positions compensated on a salary basis of less than $25,000 a year
- (2)    Includes full-time employment, temporary employment of over 3 days, and part-time employment, but not openings that the Contractor proposes to fill from within its own organization or under customary and traditional employer-union hiring arrangement, nor openings in an educational institution that are restricted to students of that institution.

(B) General
- (1)    Regarding any position for which the employee or applicant for employment is qualified, the Contractor shall not discriminate against the individual because the individual is a special disabled or Vietnam Era veteran. The Contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified special disabled and Vietnam Era veterans without discrimination based upon their disability or veterans status in all employment practices such as
  - (I)    Employment;
  - (ii)   Upgrading;
  - (iii)  Demotion or transfer;
  - (iv)   Recruitment;
  - (v)    Advertising;
  - (vi)   Layoff or Termination
  - (vii)  Rates of pay or other forms of compensation; and
  - (viii) Selection for training, including apprenticeship.
- (2)    The Contractor agrees to comply with the rules, regulations and relevant orders of the Secretary of Labor (Secretary) issued under the Vietnam Era Veterans' Readjustment Assistance Act of 1972 (the Act), as amended.

(C) Listing Openings
- (1)    The Contractor agrees to list all suitable employment openings existing at contract award or occurring during contract performance, at an appropriate office of the State employment service system in the locality where the opening occurs. These openings include those occurring at any Contractor facility, including one not connected with performing this contract. An independent corporate affiliate is exempt from this requirement.

(2)     State and local government agencies holding Federal contracts of $10,000 or more shall also list all their suitable openings with the appropriate office of the State employment service.

(3)     The listing of suitable employment opening with the State employment service system is required at least concurrently with using any other recruitment source or effort and involves the obligations of placing a bona fide job order, including accepting referral of veterans and non-veterans. This listing does not require hiring any particular group of job applicants and is not intended to relieve the Contractor from any requirements of Executive orders or regulations concerning nondiscrimination in employment.

(4)     Whenever the Contractor becomes contractually bound to the listing terms of this clause, it shall advise the State employment service system, in each state where it has establishments, of the name and location of each hiring location in the State. As long as the Contractor is contractually bound to these terms and has so advised the State system, it need not advise the State system of subsequent contracts. The Contractor may advise the State system when it is no longer bound by this contract clause.

(5)     Under the most compelling circumstances, an employment opening may not be suitable for listing, including situations when (I) the Government's needs cannot reasonably be supplied, (ii) listing would be contrary to national security, or (iii) the requirement of listing would not be in the Government's interest.

(D) Applicability

(1)     This clause does not apply to the listing of employment openings which occur and are filled outside the 50 States, the District of Columbia, Puerto Rico, Guam, Virgin Islands, American Samoa, and the Trust Territory of the Pacific Islands.

(2)     The terms of paragraph © above of this clause do not apply to openings that the Contractor proposes to fill from within the Contractor's own organization or under a customary and traditional employer-union hiring arrangement. This exclusion does not apply to a particular opening once an employer decides to consider applicants outside of its own organization or employer-union arrangement for that opening.

(E) Postings

(1)     The Contractor agrees to post employment notices stating(I) the Contractor's obligation under the law to take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era, and (ii) the rights of applicants and employees.

(2)     These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be if form prescribed by the Director, office of Federal Contract Compliance Programs, Department of Labor (Director), and provided by or through the Contracting Officer.

(3)     The Contractor shall notify each labor union or representative of workers with which has a collective bargaining agreement or other contract understanding, that the Contractor is bound by the terms of Act, and is committed to take affirmative action to employ, and advance in employment, qualified special disabled and Vietnam Era veterans.

(F) Noncompliance

If the contractor does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations and relevant orders of the Secretary issued pursuant to the Act.

(G) Subcontracts

The Contractor shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary. The Contractor shall act as specified by the Director to enforce the terms, including action for noncompliance.

## 1.20 INSURANCE - WORK ON A GOVERNMENT INSTALLATION (FAR 52.228-5) (SEPT 1989)

(A)     The Contractor shall, at its own expense, provide and maintain during the entire performance period of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract.

(B)     Before commencing work under this contract, the Contractor shall certify to the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective (1) for such period as the laws of the State in which this contract is to be performed prescribe or (2) until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer.

(C)     The Contractor shall insert the substance of this clause, including this paragraph (c), in subcontracts under this contract that required work on a Government installation and shall require subcontractors to provide and maintain the insurance required in the Schedule or elsewhere in the contract.  The Contractor shall maintain a copy of all subcontractors' proofs of required insurance, and shall make copies available to the contracting officer upon request.

1.49 VALUE ENGINEERING - CONSTRUCTION (FAR 52.248-3) (MAR 1989)

(A)     General: The Contractor is encouraged to develop, prepare, and submit value engineering change proposals (VECP's_ voluntarily. Contractor shall share in any instant contract savings realized from accepted VECP's, in accordance with Paragraph (f) below.

(B)     Definitions: "Collateral costs." as used in this clause means agency costs of operation, maintenance, logistic support, or Government-furnished property.  "Collateral savings." as used in this clause, means those measurable reductions resulting from a VECP in the agency's overall projected collateral costs, exclusive of acquisition savings, whether or not the acquisition cost changes.  "Contractor's development and implementation costs." as used in this clause, means those costs the Contractor incurs to make the contractual changes required by Government acceptance of a VECP.  "Government costs," as used in this clause, means those agency costs that result directly from developing and implementing the VECP, such as any net increases in the cost of testing, operations, maintenance, and logistic support.  The term does not include the normal administrative costs of processing the VECP.  "Instant contract savings." as used in this clause, means the estimated reduction in Contractor cost of performance resulting from acceptance of the VECP, minus allowable Contractor's development and implementation costs (see Paragraph (h) below).  "Value engineering change proposal (VECP)" means a proposal that-
(1)     Requires a change to this, the instant contract, to implement; and
(2)     Results in reducing the contract price or estimated cost without impairing essential functions or characteristics' provided, that it does not involve a change-
            (I) In deliverable end item quantities only; or
            (ii) To the contract type only.

(C)     VECP preparation.  As a minimum, the Contractor shall include in each VECP the information described in subparagraphs (1) through (7) below.  If the proposed change is affected by contractually required configuration management or similar procedures, the instructions in those procedures, relating to format, identification, and priority assignment shall govern VECP preparation.  The VECP shall include the following:
(1)     A description of the difference between the existing contract requirement and that proposed, the comparative advantages and disadvantages of each, a justification when an item's function or characteristics are being altered, and the effect of the change on the end item's performance.
(2)     A list and analysis of the contract requirements that must be changed if the VECP is accepted, including any suggested specification revisions.
(3)     A separate detailed cost estimate for (I) the affected portions of the existing contract requirements and (ii) the VECP.  The cost reduction of associated with the VECP hall take into account the Contractor's allowable development and implementation costs, including any amount attributable to subcontracts under paragraph (h) below.
(4)     A description and estimate of costs the Government may incur in implementing the VECP, such as test and evaluation and operating and support costs.
(5)     A prediction of any effects the proposed change would have on collateral costs to the agency.
(6)     A statement of the time by which a contract modification accepting the VECP must be issued in rider to achieve the maximum cost reduction, noting any effect on the contract completion time or delivery schedule.
(7)     Identification of any previous submissions of the VECP, including the date submitted, the agencies and contract numbers involved, and previous Government actions, if known.

(D)     Submission
        The Contractor shall submit VECP's to the General Contractor at the work site, with a copy to the Contracting Officer.

32

(E)    Government Action:

    (1)    The General Contractor shall notify the Contractor of the status of the VECP within 45 calendar days after the General Contractor receives it. If additional time is required, the General Contractor shall notify the Contractor within 45-day period and provide the reason for the delay and the expected date of the decision. The Government will process the VECP's expeditiously; however, it shall not be liable for any delay in acting upon a VECP.

    (2)    If the VECP is not accepted, The General Contractor shall notify the Contractor in writing, explaining the reasons for rejection. The Contractor may withdraw any VECP, in whole or in part, at any time before it is accepted by the Government. The General Contractor may require that the contractor provide written notification before undertaking significant expenditures for VECP effort.

    (3)    Any VECP may be accepted, in whole or in part, by the General Contractor's award of a modification to this contract citing this clause. The General Contract may accept the VECP, even though an agreement on price reduction has not been reached, by issuing the Contractor a notice to proceed with change. Until a notice to proceed is issued or a contract modification applies a VECP to this contract, the Contractor shall perform in accordance with the existing contract. The General Contractor's decision to accept or reject all or part of any VECP shall be final and not subject to the disputes clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. 601-613).

(F)    Sharing (1) Rates

    The Government's share of savings is determined by subcontracting Government costs from instant contract savings and multiplying the result by (I) 45 percent for fixed-price contracts or (ii) 75 percent for cost-reimbursement contracts. (2) Payment: Payment of any share due the Contractor for use of a VECP on this contract shall be authorized by a modification to this contract to-

        (I)    Accept the VECP;

        (ii)   Reduce the contract price or estimated cost by the amount of instant contract savings; and

        (iii)  Provide the Contractor's share of savings by adding the amount calculated to the contract price or fee.

(G)    Collateral Savings

    If a VECP is accepted, the instant contract amount shall be increased by 20 percent of any projected collateral savings determined to be realized in a typical year of use after subcontracting any Government costs not previously offset. However, the contractor's share of collateral savings shall not exceed (1) the contract's firm-fixed-price or estimated cost, at the time the VECP is accepted, or (2) $100,000, whichever is greater. The General Contractor shall be in sole determined of the amount of collateral savings, and that amount shall not be subject to the Disputes clause or otherwise subject to litigation under U.S.C. 601-613.

(H)    Subcontracts

    The Contractor shall include an appropriate value engineering clause in any subcontract of $50,000 or more and may include one in subcontracts of lesser value. In computing any adjustment in this contract price under paragraph (f) above the Contractor's allowable development and implementation costs clearly resulting from a VECP accepted by the Government under this contract, but shall exclude any value engineering incentive payments to a subcontractor value engineering incentive payments; provided, that these payments shall not reduce the Government's share of the savings resulting from the VECP.

(I)    Data

    The Contractor may restrict the government's right to use any part of a VECP or the supporting data by marking the following legend on the affected parts: "These data, furnished under the Value Engineering-Construction clause of contract _____, shall not be disclosed outside the Government or duplicated, used, or disclosed, in whole or in part, for any purposes other than to evaluate a value engineering change proposal submitted under this clause. This restriction does not limit the Government's right to use information contained in these data if it has been obtained or is otherwise available from the Contractor or from another source without limitations."

33

If a VECP is accepted, the Contractor hereby grants the Government unlimited rights in the VECP and supporting data, except that, with respect to data qualifying and submitted as limited rights technical data, the Government shall have the rights specified in the contract modification implementing the VECP and shall appropriately mark the data. (The terms "unlimited rights" and "limited rights" are defined in part 27 of the Federal Acquisition Regulation.)

## 1.6 SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS - SEALED BIDDING (FAR 52.214-28) (NOV 1994)

(A)    The requirements of paragraphs (b) and © of this clause shall (1) become operative only for any modification to this contract involving aggregate increases and/or decreases in costs, plus applicable profits, expected to exceed $100,000 and (2) be limited to such modifications.

(B)    Before awarding any subcontract expected to exceed the threshold for submission of cost of pricing data at (FAR) 48 CFR 15.804-2(a) (1) when entered into, or pricing any subcontract modification involving aggregate increases and/or decreases in cost, plus applicable profits, excepted to exceed the threshold for submission of cost or pricing data at (FAR) 48 CFR 15.804-2(a) (1), the contractor shall require the subcontractor to submit cost of pricing data (actually or by specific identification writing), unless the price is-

(1)    Based on adequate price competition;

(2)    Based on established catalog or market prices of commercial items sold in substantial quantities to the general public; or

(3)    Set by law or regulation.

(C)    The Contractor shall require the subcontractor to certify in substantially the form prescribed in Subsection 15.804-4 of the Federal Acquisition Regulation that, to the best of the Contractor's knowledge and belief, the data submitted under paragraph (b) above were accurate, complete, and current as the date of agreement on the negotiated price of the subcontract or subcontract modification.

(D)    The subcontractor shall insert the substance of this clause, including this paragraph (d), in each subcontract that exceeds $100,000, or for the Department of Defense, the National Aeronautics and Space Administration and the Coast Guard, in each subcontract that exceeds $500,000 when entered into.

34

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1001

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    **12  /  01  /04**

**You are directed to make the following changes in this Contract** DESCRIPTION: *Cleanout, sweep, scraperoom Y 116, the pour Adex K-15 (Kokolakis material) self leveler to make smooth and level within 1/8" in 10' standard in room . OK'ed by Steve from Kokolakis. Done on 11/24/04*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.          AND/Or TOTAL MAN HOURS  12

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                              $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including
this Change Order will be:                                                                          $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**      **OR**   **Architect**

**Mathusek Inc,**

Address                          Address

Address 60 West Englewood Ave
Bergenfield, NJ 07621

Representative Signature          Representative Signature          Representative Signature

DATE  12/01/04          DATE                          DATE

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Math~~us~~ek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1002

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT

NO: CONTRACT FOR:

CONTRACT DATE:    12 / 03 /04

**You are directed to make the following changes in this Contract** DESCRIPTION: *Patch at balcony ½" X ½" all the way around edge. Labor and material 3 bags MAPEI PRP 110. Patching done on 11/25/04. OK'ed by Steve from Kokolakis*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.        AND/Or TOTAL MAN HOURS__3

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are                                                                    $.
Net change by previously authorized Change Orders:                                                          $,
The Contract Sum prior to this Change Order was:
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including
this Change Order will be:                                                                                  $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| General Contractor or Project Manager | **OR** Architect | Mathusek Inc, |
|---|---|---|
| | | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Address | Address | |
| Representative Signature | Representative Signature | Representative Signature |
| DATE 12/7/04 | DATE | DATE 12/7/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120304

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12 / 04 /04

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: *<u>Sweep and move material to be able to shoot 4th and 5th floors. OK'ed by Steve from Kokolakis. Done on 11/29/04</u>*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.    AND/Or TOTAL MAN HOURS__6

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

<u>Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.</u>
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:    $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including this Change Order will be:    $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the date of this Change Order therefore is:

| **General Contractor or Project Manager** _OR_ | **Architect** | **Mathusek Inc,** |
|---|---|---|
| Address | Address | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Representative Signature | Representative Signature | Representative Signature |
| DATE 12/7/04 | DATE | DATE 12/7/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006    G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120404

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12 / 04 /04

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: ***Ardex Feather finish all cracks to make ready to pour leveler. OK'ed by Steve from Kokolakis. Done on 12/02/04***

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.        AND/Or TOTAL MAN HOURS  2

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

<u>Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.</u>
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                                          $,
The Contract Sum prior to this Change Order was:                                                                          $,
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including
this Change Order will be:                                                                          $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or Project Manager** | *OR* | **Architect** | | **Mathusek Inc,** |
|---|---|---|---|---|
| | | | | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Address | | Address | | |
| Representative Signature | | Representative Signature | | Representative Signature |
| DATE 12/7/04 | | DATE | | DATE 12/7/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1004

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12 / 04 /04

---

**You are directed to make the following changes in this Contract DESCRIPTION:** *Move skid and assorted material to be able to shoot 1st floor. Also scraping and sweeping first floor. OK'ed by Steve from Kokolakis. Done on 12/01/04*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

(13) mu

TOTAL DOLLAR AMOUNT OF MATERIALS:          AND/Or TOTAL MAN HOURS  25

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                      $.
The Contract Sum prior to this Change Order was:                                          $.
The Contract Sum will be (0) increased (0) decreased (0) unchanged by this Change Order. The new Contract Sum including this Change Order will be:                                          $.
The Contract Time will be (0) increased (0) decreased (0) unchanged by  days. The Date of Substantial Completion as of the date of this Change Order therefore is:

**General Contractor or Project Manager**   **OR**   **Architect**                     **Mathusek Inc,**

Address                          Address                          Address 60 West Englewood Ave.
                                                                  Bergenfield, NJ 07621

Representative Signature          Representative Signature          Representative Signature

DATE 12/1/04                     DATE                             DATE

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701     1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1005

TO (Contractor):
 J. Kokolakis Contracting, Inc.
 585 Route 25A
 Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /  04  /04

## You are directed to make the following changes in this Contract DESCRIPTION: _Buffing, scraping and sweeping Y320. OK'ed by Steve from Kokolakis. Done on 12/02/04_

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:        AND/Or TOTAL MAN HOURS   16

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                           $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including  $.
this Change Order will be:                                                                                 $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**      **OR**    **Architect**                           **Mathusek Inc,**

Address                        Address                                    Address 60 West Englewood Ave
                                                                                  Bergenfield, NJ 07621

Representative Signature        Representative Signature                   Representative Signature

DATE  12/2/04                   DATE                                       DATE

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

öööööööööööööööööööööööööööööööööööööööö

istribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathu    k Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1007

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12 / 04 /04

You are directed to make the following changes in this Contract DESCRIPTION: Pouring, screeting and the feather finsh on the

edges and some ridges. 60 bags Driteck floor leveler, 2 magnesium floats, six gallons Ardex P-51 primer. 10 bags Ardex feather

finish. *OK'ed by Steve from Kokolakis. Done on 12/03/04*    Y43C

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.    AND/Or TOTAL MAN HOURS __40__

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.

The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:    $.
The Contract Sum prior to this Change Order was:    $,
The Contract Sum will be (0)-increased (0)-decreased (0)-unchanged) by this Change Order. The new  Contract Sum including
this Change Order will be:    $,
The Contract Time will be (0)-increased (0)-decreased (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    *OR*    **Architect**

Mathusek Inc,

Address

Address

Address:60 West Englewood Ave
Bergenfield, NJ 07621

Representative Signature

Representative Signature

Representative Signature

DATE12/7/04    DATE    DATE 12/7/04

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arwin Center

CHANGE ORDER NUMBER: 1206

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /  06  /04

## You are directed to make the following changes in this Contract DESCRIPTION: *26 Bags Ardex Feather Finish. Troweled on to make floor within new specifications of ½" in 15'. OK'ed by Steve from Kokolakis. Done on 12/06/04*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:          AND/Or TOTAL MAN HOURS___15

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                          $.
The Contract Sum will be (0)-increased) (0) decreased) (0) unchanged) by this Change Order. The new  Contract Sum including    $.
this Change Order will be:                                                                                 $.
The Contract Time will be (0)-increased) (0) decreased) (0) unchanged) by  days. The Date of Substantial Completion as off the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**      ***OR***   Architect                          **Mathusek Inc,**

Address                        Address                        Address 60 West Englewood Ave
                                                              Bergenfield, NJ 07621

Representative Signature        Representative Signature        Representative Signature

DATE  12| 6/04                  DATE                           DATE
AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Math_ _ek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120704

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:   12 / 07 /04

**You are directed to make the following changes in this Contract** DESCRIPTION: **_11 Bags Ardex_**

**_Feather Finish. Troweled on to make floor within new specifications of ½" in 15'. Done on_**

**_12/07/04_**    Y436 (MM)

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.        AND/Or TOTAL MAN HOURS __5 (MM)

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                   $.
The Contract Sum prior to this Change Order was:                                      $,
The Contract Sum will be (0)-increased (0)-decreased (0)-unchanged) by this Change Order. The new  Contract Sum including
this Change Order will be:                                                            $,
The Contract Time will be (0)-increased (0)-decreased (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or Project Manager** | **_OR_** | **Architect** | **Mathusek Inc,** |
|---|---|---|---|
| Address | | Address | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Representative Signature | | Representative Signature | Representative Signature |
| DATE 12/7/04 | | DATE | DATE 12/7/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120804

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    **12 / 09 /04**

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: *Take delivery of 6 skids (240 bag) of Dritek 700 and 6.6 gallons of primer. Reprime 435 because other trades walk thru and got floor dirty.*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS.          AND/Or TOTAL MAN HOURS   12

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                    $.
The Contract Sum prior to this Change Order was:                                       $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including this Change Order will be:                                    $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    <u>OR</u>    **Architect**

**Mathusek Inc,**

Address

Representative Signature

DATE 12/9/04

Address

Representative Signature

DATE

Address 60 West Englewood Ave
Bergenfield, NJ 07621

Representative Signature

DATE 8/9/04

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint / Arvin Center

CHANGE ORDER NUMBER: 121004

TO (Contractor):
J. Kolotelnik Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    **12  /  10/04**

**You are directed to make the following changes in this Contract DESCRIPTION: *Take delivery of***

***8 skids (3200 bags) of Dritek 700 and 13.2 gallons of primer. Poured 62 bags Dritek in YS 435***

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS.        AND/Or TOTAL MAN HOURS    32

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                    $
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                                            $
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or Project Manager** | **OR** | **Architect** | **Mathusek Inc,** |
|---|---|---|---|
| Address: | | Address: | Address: 60 West Englewood Ave. Bergenfield, NJ 07621 |
| Representative Signature: | | Representative Signature | Representative Signature |
| DATE 12/10/04 | | DATE | DATE 12/10/04 |

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 121304

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /  13/04

## You are directed to make the following changes in this Contract DESCRIPTION: *Poured 70 bags Dritek in YS 120. Primed with 3 gallons primer in YS 120 and YS 119. One (1) complete Ardex Mix Kit. 2 sets concrete cleats*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:        AND/Or TOTAL MAN HOURS  32

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                                    $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including    $.
this Change Order will be:                                                                                             $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    *OR*    **Architect**                    **Mathusek Inc,**

Address                          Address                          Address 60 West Englewood Ave
                                                                  Bergenfield, NJ 07621

Representative Signature         Representative Signature         Representative Signature

DATE 12/13/04                    DATE                             DATE  12/13/04

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

AIA DOCUMENT G701

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 121-04

TO (Contractor):
J. Kokulakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO.:

CONTRACT FOR:

CONTRACT DATE:    12 / 14 /04

You are directed to make the following changes in this Contract DESCRIPTION: _Poured YS 120 & YS 119 rooms on 1st floor 70 bags Dritek. Primed with 2 gallons primer. Poured 10 bags Dritek 700 and feathered out YS 435 with 10 bags Ardex Feather Finish._

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:    AND/Or TOTAL MAN HOURS    40

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                    $
The Contract Sum will be ((0)-increased) ((0)-decreased) ((0)-unchanged) by this Change Order. The new  Contract Sum including $
this Change Order will be:                                                            $
The Contract Time will be ((0)-increased) ((0)-decreased) ((0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    _OR_    **Architect**                        **Mathusek Inc,**

Address                      Address                           Address 60 West Englewood Ave
                                                                 Bergenfield, NJ 07621
Representative Signature       Representative Signature           Representative Signature

DATE 12/14/04                DATE                              DATE 12/14/04

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

CHANGE ORDER

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 050127

TO (Contractor):
Kokolakis

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:  **01/27/05**

**You are directed to make the following changes in this Contract** DESCRIPTION: *Install Impact on walls in YS 320. Use 25 sheets 1/8" plywood as base material. Install with 24 tubes PL 400 and sheet rock screw. Kokolakis will provide Pasload gun, nails, and charges to install against cinder block wall. NO EDGING TO BE PROVIDED. ALL ROUGH EDGES WILL BE EXPOSED.*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER: NEW

CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.    AND/Or TOTAL MAN HOURS

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                                    $.
The Contract Sum prior to this Change Order was:                                                                    $,
The Contract Sum will be (0)-increased (0)-decreased (0)-unchanged by this Change Order. The new  Contract Sum including this
Change Order will be:                                                                                               $,
The Contract Time will be (0)-increased (0)-decreased (0)-unchanged by  days. The Date of Substantial Completion as of the date of
this Change Order therefore is:

| General Contractor or Project Manager  *OR* | Architect | Mathusek Inc, |
|---|---|---|
| Address | Address | Address:60 West Englewood Ave Bergenfield NJ 07621 |
| Representative Signature | Representative Signature | Representative Signature |
| DATE 1/20/05 | DATE | DATE 1/27/05 |

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701   1978

CHANGE ORDER

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 041214

TO (Contractor):
Dritek

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /  14 /04

## You are directed to make the following changes in this Contract DESCRIPTION : *Poured all rooms on 1st floor 80 bags Dritek and 12 bags of Ardex featherfinsh. Primed with 2 gallons primer. Poured 10 bags Dritek 700 and feathered out YS 435 with 10 bags Ardex Feather Finish. And buffed out YS435*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:        AND/Or TOTAL MAN HOURS   48

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
The Contract Sum prior to this Change Order was:                                                      $.
Net change by previously authorized Change Orders:                                                   $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                                          $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| General Contractor or Project Manager | Architect  Owner | Mathusek Inc, |
|---|---|---|
| | | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Address | Address | |
| Representative Signature | Representative Signature | Representative Signature |
| DATE | DATE | DATE 12/14/04 |

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITIONS - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701      1978