NICOLETTE & PERKINS, P.A.
3 University Plaza, Fifth Floor
Hackensack, New Jersey 07601
(201) 488-9080
Attorneys for Plaintiff,
THE UNITED STATES OF AMERICA,
for the use of MATHUSEK INCORPORATED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------x
THE UNITED STATES OF AMERICA    :
for the use of MATHUSEK         :   Docket No. 05 CIV. 9097
INCORPORATED,                   :
                                :   MEMORANDUM    OF    LAW   IN
              Plaintiff,        :   SUPPORT   OF   PLAINTIFF'S
                                :   OPPOSITION  TO  DEFENDANTS'
v.                              :   MOTION    TO    COMPEL
                                :   ARBITRATION
J. KOKOLAKIS CONTRACTING, INC., :
SEABOARD SURETY COMPANY AND     :
ST. PAUL FIRE & MARINE          :
INSURANCE COMPANY,              :
                                :
                                :
              Defendants.       :   Judge William C. Conner
-------------------------------x
```

David A. Nicolette, Esq.
    Of Counsel
John D. Giampolo, Esq.
    On the Brief

## **PRELIMINARY STATEMENT**

Plaintiff's Complaint asserts counts seeking to recover two (2) separate monetary balances due and owing to the Plaintiff from work performed under two (2) separate and distinct subcontracts that were entered into and performed by the Plaintiff in furtherance of a general contract entered into between Defendant, J. Kokolakis Contracting, Inc. ("Kokolakis"), as the general contractor, and the respective project owner.  The first subcontract entered into between the Plaintiff and Defendant, Kokolakis, is a written agreement which contained an arbitration clause through which the Plaintiff purportedly agreed to allow any dispute arising from this subcontract to be decided by arbitration. However, the second subcontract entered into between the Plaintiff and Defendant, Kokolakis, contains no such arbitration provisions.

The two subcontracts at issue were at all times relevant agreed and understood by the Plaintiff and Defendant, Kokolakis, to be separate and distinct contracts for the performance of distinct services and according to distinct contract terms.  However, the Defendants now seek to compel all of Plaintiff's causes of action arising from both subcontracts to arbitration based upon the arbitration clause contained in only one (1) of the subcontracts.

A contractual arbitration clause is based upon the contractual parties' agreement to allow disputes covered by the respective arbitration clause to be arbitrated.  Here, the Plaintiff never agreed to allow any dispute arising from the second subcontract to

be arbitrated.  Furthermore, the arbitration clause contained in the first subcontract only permits a "dispute" arising from the first subcontract to be arbitrated.  Here, the Defendants have failed to present a genuine "dispute" arising from the first subcontract since the Defendants have not asserted any defense to payment of the balance that Plaintiff is owed from work performed under the first subcontract.

## STATEMENT OF FACTS

On or about October 25, 2005, The United States of America for use of Mathusek Incorporated ("Plaintiff") filed the within Complaint asserting counts to recover two (2) separate monetary balances due and owing to Plaintiff from Defendant, Kokolakis, for work performed by Plaintiff under two (2) separate and distinct subcontracts with Kokolakis, the Flooring Subcontract and the Remediation Subcontract, respectively. See The Affidavit of Robert Mathusek ("Aff. Mathusek") ¶ 2. Both the Flooring Subcontract and the Remediation Subcontract were entered into and the work performed thereunder in furtherance of a general contract (the "General Contract") between Defendant, Kokolakis, and the United States, acting through the U.S. Army Corps. of Engineers ("USACE"), in which Kokolakis agreed to construct the project known as the Arvin Cadet Physical Development Center Phase II and III at the United States Military Academy, West Point, New York (the "Project"). Aff. Mathusek ¶ 3,5-6, 11-12. Defendants, Seaboard Surety Company ("Seaboard") and St. Paul Fire & Marine Insurance Company ("St. Paul"), bound themselves jointly and severally as sureties to the General Contract. Aff. Mathusek ¶ 4 and Exhibit "A" attached thereto.

Under the Flooring Subcontract, the Plaintiff was to provide and install sports flooring at the Project in consideration for a mutually agreed flat fee of $285,000.00. Aff. Mathusek ¶ 5 and

Exhibit "B" attached thereto.  Under the Remediation Subcontract, the Plaintiff was to perform work for the remediation, via leveling and patching, of a concrete substrate in consideration for a fee to be calculated based on a time and material basis.  Aff. Mathusek ¶ 10-13 and Exhibit "C" attached thereto.

The Flooring Subcontract was entered into pursuant to a written agreement between the Plaintiff and Defendant, Kokolakis. Aff. Mathusek ¶ 5 and Exhibit B.  The Remediation Subcontract was entered into pursuant to a verbal agreement between the Plaintiff and Defendant, Kokolakis, and later confirmed by written correspondences and memoranda.  Aff. Mathusek ¶ 10-13 and Exhibit C.

Article 15 of the Flooring Subcontract contains an arbitration clause (the "Arbitration Clause") which provides that any "dispute" between the contractor and subcontractor shall, at the contractor's option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA").  Aff. Mathusek, Exhibit B.  However, pursuant to the agreed upon terms of the Remediation Subcontract, at no time did the Plaintiff agree that any dispute arising from same would be submitted to arbitration nor did the Plaintiff ever agree to waive its right to object to compulsion of any dispute under the Remediation Subcontract to any arbitration forum.  Aff. Mathusek ¶ 19-20.

-4-

None of the Affirmative Defenses set forth in Defendants' Answer to the Plaintiff's Complaint assert any defense to payment of the outstanding balance owed to the Plaintiff from work performed under the Flooring Subcontract. Aff. Mathusek ¶ 22; see also Defendants' Answer to Plaintiff's Complaint. Rather, Defendants' have only asserted that the Plaintiff is not due any balance from the Remediation Subcontract.

To date, Plaintiff has completed all work that was agreed to be performed under the Flooring Subcontract and all work that was agreed to be performed under the Remediation Subcontract. Aff. Mathusek ¶ 17. However, there currently remains a total balance of $75,152.44 due and owing to Plaintiff from work performed under the Flooring Subcontract and a total balance of $36,956.36 due and owing to Plaintiff from work performed under the Remediation Subcontract. Aff. Mathusek ¶ 17.

Defendants commenced the within Motion seeking an order compelling all counts of Plaintiff's Complaint to be decided by AAA on the grounds that the Arbitration Clause, which is contained only in the Flooring Subcontract, enables the Defendants to compel any disputes between the Plaintiff and Defendant, Kokolakis, to AAA. However, relevant law stands to the contrary since the Remediation Subcontract and the Flooring Subcontract are separate and distinct agreements. Furthermore, compulsion to AAA of those items of Plaintiff's Complaint that seek payment of the balance owed to

Plaintiff from work performed under the Flooring Subcontract is also inappropriate since the Arbitration Clause only permits "disputes" arising from the Flooring Subcontract to be arbitrated. Here, by failing to assert any defense to payment of the balance owed to Plaintiff for work performed under the Flooring Subcontract, the Defendants have failed to present a "dispute" arising from the Flooring Subcontract.

## LEGAL ARGUMENT

### I.   THIS COURT HAS THE DISCRETION AND THE JUDICIAL RESPONSIBILITY TO DETERMINE WHETHER PLAINTIFF HAD AGREED TO SUBMIT EACH OF THE ISSUES AND DISPUTES SET FORTH IN PLAINTIFF'S COMPLAINT TO ARBITRATION

The Defendants bring the within motion pursuant to the Arbitration Clause contained in the Flooring Subcontract and pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA") seeking an order compelling all causes of action in Plaintiff's Complaint to arbitration.  However, "[a]n order under the Federal Arbitration Act compelling a party to arbitrate is simply an order granting specific of an arbitration provision, . . . *and a court must interpret that provision to determine whether it requires arbitration of certain items prior to granting such relief*." Necchi S.p.A. v. Necchi Mach Sales Corp., 348 F.2d 693, 696 (2nd Cir. 1965) (citations omitted) (emphasis added).  "The court must decide whether the parties had agreed to submit the particular disputes to arbitration." Id.  The United States Supreme Court has explicitly provided that the question of whether or not a contractual party is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contracts entered into by the parties.  Id.; see also Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962).  "'For arbitration is a matter of contract and *a party cannot be required to submit to arbitration any dispute which he has not agreed so to*

–7–

*submit.'"* <u>Necchi</u>, 348 F.2d at 696 (quoting <u>United Steelworkers v.</u> <u>Warriors & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1963)) (emphasis added).

Since, here, only the Flooring Subcontract contains the Arbitration Clause, this Court has the responsibility to determine whether each of the items set forth on the Plaintiff's Complaint is a matter, dispute or disagreement arising out of the Flooring Subcontract. <u>Necchi</u>, 348 F.2d at 697. The Court is charged with this responsibility "[n]otwithstanding 'the federal policy to construe liberally arbitration clauses' . . . and the Federal Arbitration Act's 'liberal policy of promoting arbitration.'" <u>Id.</u> (quoting <u>Metro Industrial Painting Corp. v. Terminal Const. Co.</u>, 287 F.2d 382, 385(1961) and <u>Robert Lawrence Co. v. Devonshire</u> <u>Fabrics, Inc.</u>, 271 F.2d 402, 410 (2nd Cir. 1959)).

**II.    NONE OF THE ISSUES, ITEMS, DISAGREEMENTS OR DISPUTES CONCERNING PLAINTIFF'S RECOVERY OF THE BALANCE OWING TO PLAINTIFF FROM WORK PERFORMED UNDER THE REMEDIATION SUBCONTRACT ARE ARBITRABLE BECAUSE PLAINTIFF NEVER AGREED TO ARBITRATE SAME AND ALL SUCH ISSUES, ITEMS, DISAGREEMENTS AND DISPUTES ARISE FROM A CONTRACT THAT, AT ALL TIMES, REMAINED SEPARATE AND DISTINCT FROM THE SUBCONTRACT CONTAINING THE ARBITRATION CLAUSE**

Here, the Plaintiff never agreed to arbitrate any issues, items, disagreements or disputes arising out of the Remediation Subcontract. Aff. Mathusek ¶ 19. However, the Defendants rely upon the language contained in Article 15 of the Flooring Subcontract that provides for "[a]ny dispute between Contractor and Subcontractor" to be decided by arbitration. This language in the Arbitration Clause is apparently broad. Similarly, the Court of Appeals in <u>Necchi S.p.A. v. Necchi Mach Sales Corp.</u>, 348 F.2d 693, 696 (2nd Cir. 1965) was faced with a complaint containing items that arose from a contract with an equally broad arbitration clause and items that arose from a separate and distinct contract between the same parties for the same industry. However, the <u>Necchi</u> Court acknowledged that "the ostensible broad reach of the arbitration provision in question [did not] relieve[] the District Court of judicial responsibility of determining the question of arbitrability." <u>Necchi</u>, 348 F.2d at 696. Ultimately, the <u>Necchi</u> Court found that where a matter referred to in an item of the

-9-

complaint was governed by a contract entered into by the parties and "that contract, one without an arbitration provision, ha[d] remained distinct and separate" from the contract which contained the arbitration provision in question, such a matter was not arbitrable. Id. at 698. Since both of the aforesaid contracts in Necchi were for the distribution of similar merchandise in the same industry, the Necchi Court acknowledged that many of the matters that were governed by the contract without an arbitration provision would not have arisen if the contract containing the arbitration provision had never existed between the parties. However, "this is not sufficient to render [such matters] arbitrable." Id.

Here, as the Arbitration Clause is only contained in the Flooring Subcontract, it clearly only concerns disputes or matters between the parties governed by the Flooring Subcontract. At all times the Remediation Subcontract remained and, or was represented by Kokolakis to remain, separate and distinct from the Flooring Subcontract in regard to the nature of services to be performed thereunder as well as the terms of service and terms of payment. Aff. Mathusek ¶ 10-16. Moreover, all grounds and allegations upon which Plaintiff seeks payment of the balance due from work performed under the Remediation Subcontract arise from the agreed upon terms of the Remediation Subcontract. Plaintiff does not rely upon any provision of the Flooring Subcontract in its action for payment of the balance due from the Remediation Subcontract nor

-10-

does any provision of the Flooring Subcontract contain any description of the leveling and patching work that Plaintiff was to perform to the Project pursuant to the Remediation Subcontract. Thus, as the Remediation Subcontract contains no arbitration provision, verbal or written, none of the issues, items, disagreements or disputes concerning the balance of which Plaintiff seeks payment for work performed under the Remediation Subcontract may be compelled to arbitration.

**III. SUBMISSION OF ANY OF THE ISSUES, ITEMS, DISAGREEMENTS OR DISPUTES CONCERNING PLAINTIFF'S RECOVERY OF THE BALANCE DUE FROM WORK PERFORMED UNDER THE FLOORING SUBCONTRACT ARE INAPPROPRIATE FOR ARBITRATION**

The language of the Arbitration Clause, although purportedly broad, clearly provides for only "disputes" between the parties to be arbitrated.   While the Defendants may have disputed the Plaintiff's right to payment of the balance due from work performed under the Remediation Subcontract, the Defendants have failed to assert any defense in their pleadings to Plaintiff's claim for payment of the balance due for work performed under the Flooring Subcontract.   Such failure on the part of the Defendants foregoes the propriety of arbitration as to whether Plaintiff may maintain the action for work performed under the Flooring Subcontract. Accepting all statements and allegations in the Defendants' Answer to Plaintiff's Complaint as true, the Defendants have failed to assert any defense as to this issue.

**<u>CONCLUSION</u>**

Pursuant to all of the foregoing, the Court must deny the Defendants' motion for an order summarily directing the parties herein to proceed to arbitration.

Respectfully submitted,
NICOLETTE & PERKINS, P.A.
Attorneys for Plaintiff


By:  <u>/s/David A. Nicolette</u>
DAVID A. NICOLETTE

Dated:  October 18, 2006

-13-

NICOLETTE & PERKINS, P.A.
3 University Plaza, Fifth Floor
Hackensack, New Jersey 07601
(201) 488-9080
Attorneys for Plaintiff,
THE UNITED STATES OF AMERICA,
for the use of MATHUSEK INCORPORATED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
THE UNITED STATES OF AMERICA      :
for the use of MATHUSEK           :    Docket No. 05 CIV. 9097
INCORPORATED,                     :
                                  :    AFFIDAVIT    OF    ROBERT
                Plaintiff,        :    MATHUSEK   IN   SUPPORT   OF
                                  :    PLAINTIFF'S  OPPOSITION  TO
v.                                :    DEFENDANTS'   MOTION   TO
                                  :    COMPEL ARBITRATION
J. KOKOLAKIS CONTRACTING, INC.,   :
SEABOARD SURETY COMPANY AND       :
ST. PAUL FIRE & MARINE            :
INSURANCE COMPANY,                :
                                  :
                                  :
                Defendants.       :    Judge William C. Conner
------------------------------------x
```

STATE OF NEW JERSEY        )
                           ) ss:
COUNTY OF BERGEN           )

Robert Mathusek, being duly sworn, states:

1. I am Vice President and shareholder of Mathusek Incorporated and make all of the following statements based upon my experience and personal knowledge of this matter.

2. On or about October 25, 2005, The United States of America for use of Mathusek Incorporated ("Plaintiff") filed suit seeking payment which is due and owing to Plaintiff from J.

Kokolakis Contracting, Inc. ("Kokolakis") for work performed by Plaintiff under a subcontract with Kokolakis for the provision and installation of sports flooring (the "Flooring Subcontract") and for work performed by Plaintiff under another separate and distinct subcontract for the remediation, patching and leveling, of a concrete substrate (the "Remediation Subcontract").

3.   The United States, acting through the U.S. Army Corps. of Engineers ("USACE"), and Kokolakis entered into a contract (the "General Contract") in which Kokolakis agreed to construct the project known as the Arvin Cadet Physical Development Center Phase II and III at the United States Military, Academy, West Point, New York (the "Project").

4.   Defendant, Kokolakis, as principal, and Defendants, Seaboard and St. Paul, as sureties on April 4, 2002, executed a payment bond to the United States in which Kokolakis, as principal, and Seaboard and St. Paul, as sureties, bound themselves jointly and severally in the sum of $14,562,000.00 as to Seaboard and $57,407,750.00 as to St. Paul, conditioned that if the principal will promptly make payment to all persons supplying labor and material in the prosecution of the work provided in furtherance of the General Contract, then said obligation to be void, otherwise to remain in full force and effect.   A copy of the bond is attached hereto as Exhibit "A."

-2-

5.    In furtherance of the General Contract, on or about
September 13, 2004, Kokolakis entered into the Flooring Subcontract
with Plaintiff, pursuant to which Plaintiff was to provide and
install a sports floor at the Project for the agreed upon price of
$285,000.00.  A copy of the Flooring Subcontract is attached hereto
as Exhibit "B."

6.    After all terms of the Flooring Subcontract had been
agreed upon and executed and after Plaintiff had prepared its
sports flooring product pursuant to the specifications of the
Flooring Subcontract, Kokolakis, through either its own efforts or
that of another subcontractor, poured layers of concrete on the
substrate or "sub-floor" surface (the "Concrete Substrate") upon
which Plaintiff was to install its sports flooring product at the
Project.

7.    Thereafter, I personally examined the Project site and
observed that the Concrete Substrate was not level and thus, would
not meet the tolerance specifications of Plaintiff's flooring
product.

8.    In or about the last week of November of 2004, I met with
Artie Gureck, Jr., who, at all times, is the Project Manager of
Kokolakis to communicate my aforesaid observation.

9.    Pursuant to said meeting, Mr. Gureck agreed with my
aforesaid observation that the concrete had been improperly laid to
the Concrete Substrate and acknowledged that this condition had to

be remedied in order for Plaintiff's sports flooring product to be
properly installed.

10. Mr. Gureck also acknowledged that the performance of any
leveling or remedial work to the Concrete Substrate was not within
the scope of work that Plaintiff was to perform under the Flooring
Subcontract. Mr. Gureck and I verbally agreed that Plaintiff would
perform remediation work, including patching and leveling, to the
Concrete Substrate under an agreement and for a contract price that
was to be separate and distinct from that of the Flooring
Subcontract and on a time and material basis, the Remediation
Subcontract.

11. Mr. Gureck and I, as well as other representatives of
Plaintiff, also met with Micky McMahon, General Supervisor of
Kokolakis, and Nick Multari, a representative of USACE, regarding
the Remediation Subcontract, who also expressed their acquiescence
to same.

12. Mr. Gureck and Mr. McMahon also verbally agreed that,
under the Remediation Subcontract, Plaintiff was to perform the
"remediation work" to the extent necessary to balance the flooring
of the rooms upon which Plaintiff's sports flooring product would
be installed and that the sufficient degree of balance of these
rooms would be decided by Plaintiff and Mr. McMahon, on behalf of
Kokolakis, on a room by room basis and based upon the severity of
imperfections on the flooring.

-4-

13. Mr. Gureck and Mr. McMahon further agreed that, since Plaintiff was to perform the remediation work under the Remediation Subcontract on a time and material basis, "tickets" reflecting work and material charges were to be prepared by Plaintiff and signed by a representative of both Plaintiff and Kokolakis on a daily basis. Copies of written correspondences and memoranda, dated December 2, 2004 and December 6, 2004, respectively, issued from Kokolakis to Plaintiff memorializing all of the above terms of the Remediation Subcontract and directing Plaintiff to proceed with work thereunder are attached hereto as Exhibit "C."

14. All remediation work performed by Plaintiff under the Remediation Subcontract was approved by Mr. McMahon at the Project site and documented on tickets, using change order forms, which were signed by Mr. McMahon. Such was not a practice required or followed for work performed by Plaintiff for the installation of its sports flooring under the Flooring Subcontract since work under the Flooring Subcontract was agreed to be performed for a flat contract price rather than on a time and material basis. Copies of all tickets, signed by Mr. McMahon on behalf of Kokolakis, documenting the work performed by Plaintiff under the Remediation Subcontract are attached hereto as Exhibit "D."

15. At all times, I, as well as other representatives of Plaintiff, clearly stated to both Mr. McMahon and Mr. Gureck that Plaintiff intended and understood the Remediation Subcontract, and

-5-

all work performed thereunder, to be an agreement completely separate and distinct from the Flooring Subcontract and both Mr. McMahon and Mr. Gureck agreed to same.

16. At all times, both Mr. Gureck and Mr. McMahon represented to me that, as Project Manager and General Supervisor, respectively, they possessed the authority to agree to the Remediation Subcontract on behalf of Kokolakis.

17. To date, Plaintiff has completed all work that was to be performed under the Flooring Subcontract and all work that was to be performed under the Remediation Subcontract. Currently, there remains a total balance of $75,152.44 due and owing to Plaintiff from work performed under the Flooring Subcontract and a total balance of $36,956.36 due and owing to Plaintiff from work performed under the Remediation Subcontract.

18. Defendant, Kokolakis is liable to Plaintiff for the aforesaid amounts as the principal and general contractor of the Project and Defendants, Seaboard and St. Paul are liable to Plaintiff for the aforesaid amounts as the sureties of the Project.

19. Plaintiff at no time agreed to allow arbitration of any dispute arising from the Remediation Subcontract and hereby objects to compulsion of the current dispute to arbitration.

20. As the Remediation Subcontract was, at all times relevant, agreed and understood by Plaintiff and Kokolakis to be an agreement separate and distinct from the Flooring Subcontract, none

-6-

of the counts of Plaintiff's Complaint herein that seek payment of the $36,956.36 balance due and owing to Plaintiff from work performed under the Remediation Subcontract should be compelled to arbitration.

21. Furthermore, Plaintiff contends that compulsion to arbitration of Plaintiff's counts which seek payment of the $75,152.44 balance due and owing to Plaintiff from work performed under the Flooring Subcontract is inappropriate since only a "dispute" arising from the Flooring Subcontract may be submitted to arbitration and the Defendants have failed to assert any grounds to dispute satisfaction of the aforesaid balance owed to Plaintiff from the Flooring Subcontract.

22. None of the Affirmative Defenses set forth in the Defendants' Answer to Plaintiff's Complaint assert any defense to payment of the $75,152.44 balance due and owing to Plaintiff from work performed under the Flooring Subcontract. Defendants have only asserted that Plaintiff is not owed any payment for work performed under the Remediation Subcontract.

23. Based upon all of the foregoing, Plaintiff prays the Court to deny the Defendants' Motion for an order compelling arbitration of this dispute and staying all further proceedings in this action until arbitration has been completed.

I declare under penalty of perjury that the foregoing is true and correct.

-7-

10/18/2006 16:09    01
10/17/2006 12:16    2014885580

Case 7:05-cv-09097-WCC    Document 13-2    Filed 10/18/2006    Page 8 of 8

MATHUSEK INC
NICOLETTE PERKINS PA

PAGE   09
PAGE   09/09

**MARIA E. VAZQUEZ**
**NOTARY PUBLIC OF NEW JERSEY**
My Commission Expires July 14, 2010

Dated: 10/18/06

Sworn to before me this
18th day of October    , 2006

Notary Public

By: /s/Robert Mathusek
    Robert Mathusek

-8-

# PAYMENT BOND
(See instructions on reverse)

*(contract)*

**APRIL 4, 2002**

OMB No.:9000-0045

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | |
|---|---|---|
| J. KOKOLAKIS CONTRACTING INC.<br>585 Route 25A<br>Rocky Point, NY 11778 | ☐ INDIVIDUAL | ☐ PARTNERSHIP |
| | ☐ JOINT VENTURE | ☒ CORPORATION |
| | STATE OF INCORPORATION<br>**NY** | |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| SEABOARD SURETY COMPANY &<br>ST. PAUL FIRE & MARINE INSURANCE COMPANY<br>499 Thornall Street<br>Edison, NJ 08837 | MILLION(S)<br>71 | THOUSAND(S)<br>969 | HUNDRED(S)<br>750 | CENTS<br>00 |
| | CONTRACT DATE<br>3/28/02 | CONTRACT NO.<br>DACA51-02-C-0005 | | |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. J. KOKOLAKIS CONTRACTING INC. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. Nick Leo<br>Vice President | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | |
| NAME(S)<br>*(Typed)* | 1. | 2. | |

| | | CORPORATE SURETY(IES) | | |
|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | SEABOARD SURETY COMPANY<br>499 Thornall St., Edison, NJ 08837 | STATE OF INC.<br>NY | LIABILITY LIMIT<br>$ 14,562,000 |
| | SIGNATURE(S) | 1. *Gerard S. Macholz* | 2. | Corporate Seal |
| | NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. GERARD S. MACHOLZ<br>ATTORNEY-IN-FACT | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

| SURETY B | NAME & ADDRESS | ST. PAUL FIRE & MARINE INSURANCE COMPANY 499 Thornall St., Edison, NJ 08837 | STATE OF INC. MN | LIABILITY LIMIT $ 57,407,750 | Corporate Seal |
| | SIGNATURE(S) | 1. *Gerard S. Macholz* | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. GERARD S. MACHOLZ ATTORNEY-IN-FACT | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space

designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**J. KOKOLAKIS**
CONTRACTING, INC.

www.jkokolak

## SUBCONTRACT

AGREEMENT

made this 22nd day of APRIL in the year TWO THOUSAND AND FOUR.

BETWEEN the Contractor:

**J. KOKOLAKIS CONTRACTING, INC.**
**585 ROUTE 25A**
**ROCKY POINT, NY  11778**

and the Subcontractor:

**MATHUSEK SPORTS FLOORS**
**60 WEST ENGLEWOOD AVENUE**
**BERGENFIELD, NJ  07621**

Project:

**ARVIN CADET PHYSICAL DEVELOPMENT**
**CENTER, PHASES 2 AND 3**
**U.S. MILITARY ACADEMY**
**WEST POINT, NEW YORK**
**CONTRACT NO. DACA51-02-C-0005**

Owner:

**U.S. ARMY COPRS OF ENGINEERS**

Architect:

**SASAKI ASSOCIATES, INC.**

**New York**
585 Route 25A
Rocky Point, NY 11778
**631.744.6147**
FAX 631.744.6156
jkcny@jkokolakis.com

**Florida**
202 E. Center Street, Suite A
Tarpon Springs, FL 34689
**727.942.2211**
FAX 727.937.5708
jkcfla@jkokolakis.com

1

The on-site Project Superintendent representing the Contractor shall have the authority to order minor changes in the Work not involving an adjustment in the Contract Sum or extension of Contract Time. All compensable Change Orders or those warranting a time extension must be ordered in writing by an officer of Contractor.



## ARTICLE 15
## DISPUTES

In the event of any dispute or claim by Subcontractor hereunder, notice of such claim shall be given to Contractor no later than seven (7) days following the event, decision or other action out of which the claim arises, or such lesser period as may be required under the Contract Documents. Such notice shall describe such dispute or claim in detail. If Subcontractor fails to provide such notice, the claim or dispute and all monetary and other relief associated therewith shall be deemed waived and abandoned by Subcontractor.

In case of any dispute between Contractor and Subcontractor, in any way relating to or arising from any act or omission of the Owner or involving the adequacy or integrity of the Contract Documents, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, tribunal, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to the Owner any required communications or documentation. Contractor will, at its option, present to Owner, in Contractor's name, or authorize Subcontractor to present to Owner in Contractor's name, Subcontractor's claims and answer the Owner's claims involving Subcontractor's work. Contractor will further invoke on behalf of Subcontractor, or allow Subcontractor to invoke, those provisions in the Contract Documents for resolution of disputes. Nothing herein shall require Contractor to certify a claim under a government contract when Contractor cannot do so in good faith. If any such dispute is prosecuted or defended by Contractor, Subcontractor, at its own expense, agrees to furnish all documents, statements, witnesses, and other information required by Contractor and to pay or reimburse Contractor for all costs incurred by Contractor in connection with the dispute, including attorneys' fees.

To the extent not resolved under the immediately preceding paragraph, any dispute between Contractor and Subcontractor shall, at Contractor's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If Contractor elects to arbitrate, then the arbitration shall be conducted in Suffolk County, New York. The foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction. Upon its request, Contractor shall be entitled to consolidation or joinder of any arbitration involving Subcontractor with related arbitrations involving other parties. The award rendered by the arbitrators shall be final and judgement may be entered in accordance with applicable law in any court of competent jurisdiction. If Contractor does not opt for arbitration, then any litigation shall be brought only in a state or federal court in Suffolk County, New York, which courts shall be the exclusive venues for litigation, unless Contractor is or becomes a party to litigation in another venue or jurisdiction that arises in whole or in part out of the Subcontract or the Work, in which event Contractor may in its sole discretion elect to join Subcontractor as a party in such other litigation. CONTRACTOR AND SUBCONTRACTOR HEREBY WAIVE THEIR RIGHTS TO TRIAL BY JURY. If Contractor notifies Subcontractor that Contractor contends any arbitration or lawsuit involves a controversy within the scope of the immediately preceding paragraph, and the arbitration or lawsuit is not consolidated with the proceeding involving the Owner, the arbitration or lawsuit shall be stayed until the proceeding involving the Owner have been resolved.

Subcontractor shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of any delays, disputes or interference, regardless of cause, except to the extent that the Contract entitles Contractor to compensation therefor and then only to the extent of any amounts that Contractor, on behalf of Subcontractor, recovers from Owner for such delays or interference.

The pendency of any claim or dispute shall not suspend or stay in any manner the obligations under this Subcontract and Subcontractor shall continue the Work and any disputed work without interruption.

Subcontractor's sureties shall be bound by the provisions of this Article to the same extent Subcontractor is bound.

## ARTICLE 16
## DEFAULT

Should Subcontractor at any time: (a) fail to supply the labor, materials, equipment, supervision, and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness and diligence required hereunder; (b) cause stoppage or delay of or interference with the Project work; (c) become insolvent; or, (d) fail in the performance or observance of any of the covenants, conditions or other terms of this Subcontract, then in any such event, each of which shall independently constitute a default hereunder by Subcontractor, Contractor shall, after giving Subcontractor prior notice of default and forty-eight (48) hours within which to cure, have the right to exercise one or more of the following remedies:

1) Require that the Subcontractor utilize, at its own expense, overtime labor, including weekend work, and additional shifts as necessary to overcome the consequence of any delay attributable to Subcontractor's default;

2) Remedy the default by whatever means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others, utilizing any materials and equipment previously purchased or brought to project site by Subcontractor, and deducting the cost thereof, plus an allowance for administrative burden equal to fifteen percent (15%) of such costs, from any monies due or to become due to Subcontractor hereunder;

3) Terminate Subcontractor's performance under this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work, and all materials, equipment, facilities, plant, tools, scaffolds, and appliances of the Subcontractor relating to the Work, for the purposes of completing the Work and securing to contractor the payment of its costs, plus an allowance for administrative burden equal to fifteen percent (15%) of such costs, and other damages under the Subcontract and for breach thereof, it being intended that Contractor shall, for the stated purposes, be the assignee of and have a security interest in the property described above to the extent located on the Project site.

4) Recover from the Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees suffered or incurred by Contractor by reason or as a result of Subcontractor's default.

12

 **J. KOKOLAKIS**
C O N T R A C T I N G ,   I N C .

www.jkokolakis.com

December 02, 2004

Mathusek Sport Floors
60 West Englewood Avenue
Bergenfield, NJ 07621

Attn:  David P. Laube

Re:   Arvin Cadet Physical Development Center
      Phase 2/3
      West Point, NY
      Contract # DACA51-02C-0005

**SUBJECT: CONCRETE SUBSTRATE @ RUBBER FLOOR AREAS**

Dear David:

Please be advised that the floor flatness tolerances for the concrete substrate where Mondo Flooring is being installed have been relaxed by the USACE.

Remediation work will be performed on a room by room basis, based on the review of conditions by JKC, Mathusek, and the USACE.

Mathusek is hereby directed to proceed with corrective work as required.  Tickets are to be prepared by Mathusek on a daily basis, and are to be signed by both Mathusek and JKC at the end of each day. Material charges are to be quantified on the daily tickets, and invoices shall be furnished as back-up.

Kindly fax a copy of Mathusek's wage rate breakdown for approval upon receipt of this directive, and proceed with work as required.

Very truly yours,

**J. KOKOLAKIS CONTRACTING, INC.**

Artie Gureck, Jr.
Project Manager

Cc: File
    Robert Mathusek

(0024)

**New York**
585 Route 25A
Rocky Point, NY 11778
631.744.6147
FAX 631.744.6156
jkcny@jkokolakis.com

**Florida**
202 E. Center Street, Suite A
Tarpon Springs, FL 34689
727.942.2211
FAX 727.937.5708
jkcfla@jkokolakis.com

**J. Kokolakis Contracting, Inc.**

Arvin CPDC Phase 2/3
West Point, NY  10996
Phone No 845-446-7060/7015/7016
Fax No 845-446-7059

# MEMO

**To: Mathusek**

**Attn: Yatzee**

**From: Micky McMahon, General Super**

**Date: 12/02/04**

**Subject:** Arvin CPDC, Phase 2/3    Contract No: DACA51-02-C-0005

Yatzee,

Per our field meeting this morning with Nick Multari from the USACE, you are directed to proceed with the floor re-mediation in Boxing Y435/436 using the screed/Dri-Tak method as discussed. We acknowledge the fact that this will not meet the exact tolerance specifications of the flooring product. You are further directed to proceed with the poured leveling method in Room Y149.

Balance of rooms will decided by you and I based on severity of imperfections and finished product to be applied.

Feel free to contact me should you have any questions.

*Micky*

# J. KOKOLAKIS
## CONTRACTING, INC.

www.jkokolakis.com

December 06, 2004

Mathusek Sport Floors
60 West Englewood Avenue
Bergenfield, NJ 07621

RECEIVED

BY: ........................

Attn:  Robert Mathusek

Re:    Arvin Cadet Physical Development Center
       Phase 2/3
       West Point, NY
       Contract # DACA51-02C-0005

**SUBJECT: _T AND M WORK_**

Dear Robert:

Please reference letter sent to David Laube on 02-Dec-04 regarding the procedures to be followed for T and M work. Remediation work is to be performed on a room by room basis, based on the review of conditions by JKC, Mathusek, and the USACE.

Tickets are to be prepared by Mathusek on a daily basis, and are to be signed by both Mathusek and JKC at the end of each day. Material charges are to be quantified on the daily tickets, and invoices shall be furnished as back-up.  Mathusek's wage rate breakdown must also be submitted for approval.

The tickets that were faxed to our office do not comply with this procedure.  Time and scope must be mutually confirmed in the field as required.

Tickets reflect a total of (158) man hours, which is not in line with the scope of work that was outlined in the field last week.

Kindly review, and discuss these items with Micky McMahon as soon as possible.

Very truly yours,

**J. KOKOLAKIS CONTRACTING, INC.**

Artie Gureck, Jr.
Project Manager

Cc: File
(0026)

**New York**
585 Route 25A
Rocky Point, NY 11778
**631.744.6147**
FAX 631.744.6156
jkcny@jkokolakis.com

**Florida**
202 E. Center Street, Suite A
Tarpon Springs, FL 34689
**727.942.2211**
FAX 727.937.5708
jkcfla@jkokolakis.com

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Math○ek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1002

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT

NO: CONTRACT FOR:

CONTRACT DATE:    12 / 03 /04

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: *Patch at balcony*

*½" X ½" all the way around edge. Labor and material 3 bags MAPEI PRP 110. Patching done on*

*11/25/04. OK'ed by Steve from Kokolakis*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.        AND/Or TOTAL MAN HOURS__3

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                                        $.
The Contract Sum prior to this Change Order was:                                                                          $,
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                                                               $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or Project Manager** | **OR** | **Architect** | **Mathusek Inc,** |
|---|---|---|---|
| | | | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Address | | Address | |
| Representative Signature | | Representative Signature | Representative Signature |
| DATE 12/7/04 | | DATE | DATE 12/7/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120304

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /  04  /04

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: *<u>Sweep and move</u>*

*<u>material to be able to shoot 4th and 5th floors. OK'ed by Steve from Kokolakis. Done on 11/29/04</u>*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF  MATERIALS:.          AND/Or TOTAL MAN HOURS  6

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

<u>Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.</u>
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                    $.
The Contract Sum prior to this Change Order was:                                                       $,
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including
this Change Order will be:                                                                             $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or Project Manager** | ***OR*** | **Architect** | **Mathusek Inc,** |
|---|---|---|---|

| | | |
|---|---|---|
| Address | Address | Address:60 West Englewood Ave |
| | | Bergenfield, NJ 07621 |
| Representative Signature | Representative Signature | Representative Signature |
| DATE 12/2/04 | DATE | DATE 12/1/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701    1978

**CHANGE ORDER**

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

*AIA DOCUMENT G701*

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120404

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /   04  /04

You are directed to make the following changes in this Contract DESCRIPTION: *Ardex Feather finish all cracks to make ready to pour leveler. OK'ed by Steve from Kokolakis. Done on 12/02/04*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.         AND/Or TOTAL MAN HOURS   2

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.

The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                          $.
The Contract Sum prior to this Change Order was:                                             $,
The Contract Sum will be (0)-increased (0)-decreased (0)-unchanged by this Change Order. The new  Contract Sum including
this Change Order will be:                                                                   $,
The Contract Time will be (0)-increased (0)-decreased (0)-unchanged by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**        ***OR***    **Architect**                              **Mathusek Inc,**

Address                                 Address                                  Address:60 West Englewood Ave
                                                                                         Bergenfield, NJ 07621
Representative Signature                Representative Signature                 Representative Signature

DATE 12/7/04                            DATE                                     DATE
AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978
                                                                                         12/7/04
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

**Mathusek Inc.**
**60 West Englewood Ave.**

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1004

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:  12 / 04 /04

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: **_More skid and_**

**_assorted material to be able to shoot 1st floor. Also scraping and sweeping first floor. OK'ed by_**

**_Steve from Kokolakis. Done on 12/01/04_**

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

(13) mu

**TOTAL DOLLAR AMOUNT OF MATERIALS:** AND/Or **TOTAL MAN HOURS** _25_

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

<u>Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.</u>
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                              $.
The Contract Sum prior to this Change Order was:                                                                 $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                                                                         $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or** **Project Manager** _OR_ | **Architect** | **Mathusek Inc,** |
|---|---|---|
| Address | Address | Address:60 West Englewood Ave. Bergenfield, NJ 07621 |
| Representative Signature | Representative Signature | Representative Signature |
| DATE 12/1/04 | DATE | DATE |

AIA DOCUMENT G701 – CHANGE ORDER – APRIL 1978 EDITION – 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701          1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Matnusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1005

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:      12  /  04  /04

You are directed to make the following changes in this Contract DESCRIPTION: *Buffing,*

*scraping and sweeping Y320. OK'ed by Steve from Kokolakis. Done on 12/02/04*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

**TOTAL DOLLAR AMOUNT OF MATERIALS.**         AND/Or **TOTAL MAN HOURS   16**

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                          $.
The Contract Sum prior to this Change Order was:                                           $.
The Contract Sum will be (0)-increased (0)-decreased (0)-unchanged by this Change Order. The new Contract Sum including
this Change Order will be:                                                                 $.
The Contract Time will be (0)-increased (0)-decreased (0)-unchanged by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    **OR**   **Architect**          **Matnusek Inc,**

Address:                  Address:               Address:60 West Englewood Ave
                                                          Bergenfield, NJ 07621

*Mickey Monk*
Representative Signature   Representative Signature   Representative Signature

DATE  12|2|04           DATE                   DATE
AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006      G701   1978

**CHANGE ORDER**

Distribution to:

*AIA DOCUMENT G701*

OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1007

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12 / 04 /04

You are directed to make the following changes in this Contract DESCRIPTION: Pouring, screeting and the feather finsh on the edges and some ridges. 60 bags Driteck floor leveler, 2 magnesium floats, six gallons Ardex P-51 primer. 10 bags Ardex feather finish. *OK'ed by Steve from Kokolakis. Done on 12/03/04*    Y43C

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.        AND/Or TOTAL MAN HOURS __40__

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.

The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                    $.
The Contract Sum prior to this Change Order was:                                      $,
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                            $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    ___OR___    **Architect**                    **Mathusek Inc,**

Address:60 West Englewood Ave
Bergenfield, NJ 07621

Address                        Address

Representative Signature          Representative Signature          Representative Signature

DATE 12/7/04              DATE                    DATE 12/7/04

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 1206

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    12  /  06  /04

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: *26 Bags Ardex*

*Feather Finish. Troweled on to make floor within new specifications of ½" in 15'. OK'ed by Steve*

*from Kokolakis. Done on 12/06/04*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:         AND/Or TOTAL MAN HOURS    15

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                $.
The Contract Sum prior to this Change Order was:                                                 $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                                         $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

## General Contractor or
## Project Manager     *OR*

### Architect

### Mathusek Inc,

Address                           Address                    Address:60 West Englewood Ave
                                                             Bergenfield, NJ 07621

Representative Signature          Representative Signature   Representative Signature

DATE 12/6/04                      DATE                       DATE

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006         G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Math Sek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 120704

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:     12 / 07 /04

You are directed to make the following changes in this Contract DESCRIPTION: *11 Bags Ardex*

*Feather Finish. Troweled on to make floor within new specifications of ½" in 15'. Done on*

*12/07/04*    Y436 (WM)

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.      AND/Or TOTAL MAN HOURS  5 (WM)

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contactor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                                    $.
The Contract Sum prior to this Change Order was:                                                       $,
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including
this Change Order will be:                                                                             $,
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

| **General Contractor or Project Manager** | ***OR*** | **Architect** | | **Mathusek Inc,** |
|---|---|---|---|---|
| Address | | Address | | Address:60 West Englewood Ave Bergenfield, NJ 07621 |
| Representative Signature | | Representative Signature | | Representative Signature |
| DATE 12/7/04 | | DATE | | DATE 12/7/04 |

AID DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006     G701   1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint / Arvin Center

CHANGE ORDER NUMBER: 120804

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:    **12  /  09  /04**

You are directed to make the following changes in this Contract DESCRIPTION: *Take delivery of 6 skids (240 bag) of Dritek 700 and 6.6 gallons of primer. Reprime 435 because other trades walk thru and got floor dirty.*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS.        AND/Or TOTAL MAN HOURS __12__

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                                     $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including     $.
this Change Order will be:                                                                                                                    $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    _OR_    **Architect**

Mathusek Inc,

Address                              Address                              Address 60 West Englewood Ave
                                                                          Bergenfield, NJ 07621

Representative Signature          Representative Signature          Representative Signature

DATE  12/9/04                      DATE                              DATE  4/9/09

AIA DOCUMENT G700 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G700    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint / Arvin Center

CHANGE ORDER NUMBER: 121004

TO (Contractor)
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:     12 / 10/04

You are directed to make the following changes in this Contract DESCRIPTION: *Take delivery of*

*8 skids (3200 bag) of Dritek 700 and 13.2 gallons of primer. Poured 62 bags Dritek in YS 435*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:    AND/Or TOTAL MAN HOURS   32

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                               $.
The Contract Sum prior to this Change Order was:                                                 $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new Contract Sum including this Change Order will be:                                                                                              $.
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the date of this Change Order therefore is:

**General Contractor or**
**Project Manager**    **OR**    **Architect**

Mathusek Inc,

Address                                    Address

Address: 60 West Englewood Ave
Bergenfield, NJ 07621

Representative Signature              Representative Signature

Representative Signature

DATE 12/10/04                          DATE

DATE 12/10/04

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006    G701    1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 121304

TO (Contractor):
J. Kokmlukis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:        12  /  13/04

_You are directed to make the following changes in this Contract DESCRIPTION: Poured 70 bags_

_Dritek in YS 120. Primed with 3 gallons primer in YS 120 and YS 119. One (1) complete Ardex_

_Mix Kit. 2 sets concrete cleats_

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:          AND/Or TOTAL MAN HOURS    32

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

_Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time._
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                          $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including     $.
this Change Order will be:
The Contract Time will be (0) increased) (0) decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the     $.
date of this Change Order therefore is:

| **General Contractor or** **Project Manager** | **OR** | **Architect** | **Mathusek Inc,** |
|---|---|---|---|
| Address | | Address | Address:60 West Englewood Ave. Bergenfield, NJ 07621 |
| Representative Signature | | Representative Signature | Representative Signature |
| DATE 12/13/04 | | DATE | DATE 12/13/04 |

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701     1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 121404

TO (Contractor):
J. Kokolakis Contracting, Inc.
585 Route 25A
Rocky Point, N.Y. 11778

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:        12 / 14 /04

<u>**You are directed to make the following changes in this Contract** DESCRIPTION: . *Poured YS 120 & YS 119 rooms on 1st floor 70 bags Dritek. Primed with 2 gallons primer. Poured 10 bags Dritek 700 and feathered out YS 435 with 10 bags Ardex Feather Finish.*</u>

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:        AND/Or TOTAL MAN HOURS   40

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                                   $.
The Contract Sum will be ((I)-increased) ((D)-decreased) ((U)-unchanged) by this Change Order. The new  Contract Sum including   $.
this Change Order will be:                                                                                        $.
The Contract Time will be ((I)-increased) ((D)-decreased) ((U)-unchanged) by  days. The Date of Substantial Completion as of the
date of this Change Order therefore is:

**General Contractor or Project Manager**   **OR**   **Architect**   **Mathusek Inc,**

Address

Address

Address 60 West Englewood Ave
Bergenfield, NJ 07621

Representative Signature

Representative Signature

Representative Signature

DATE 12/14/04

DATE

DATE 12/14/04

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701      1978

**CHANGE ORDER**

*AIA DOCUMENT G701*

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint/ Arvin Center

CHANGE ORDER NUMBER: 050127

TO (Contractor):
Kokolakis

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:        01/27/05

<u>You are directed to make the following changes in this Contract</u> DESCRIPTION: *Install Impact on*

*walls in YS 320. Use 25 sheets 1/8" plywood as base material. Install with 24 tubes PL 400 and*

*sheet rock screw. Kokolakis will provide Pasload gun, nails, and charges to install against cinder*

*block wall. NO EDGING TO BE PROVIDED, ALL ROUGH EDGES WILL BE EXPOSED.*
PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER: NEW

CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF  MATERIALS:.        AND/Or TOTAL MAN HOURS

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:
The Contract Sum prior to this Change Order was:                                                    $.
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including this    $,
Change Order will be:
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the date of    $,
this Change Order therefore is:

**General Contractor or Project**
**Manager**      ***OR***

**Architect**

**Mathusek Inc,**

Address

Representative Signature

DATE  1/27/05

Address

Representative Signature

DATE

Address:60 West Englewood Ave
Bergenfield, NJ 07621
Representative Signature

DATE  1/27/05

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006        G701    1978

**CHANGE ORDER**

Distribution to:
OWNER
ARCHITECT
CONTRACTOR
FIELD
OTHER

*AIA DOCUMENT G701*

# Mathusek Inc.
# 60 West Englewood Ave.

PROJECT: WestPoint// Arvin Center

CHANGE ORDER NUMBER: 041214

TO (Contractor):
Dritek

INITIATION DATE:

ARCHITECT'S PROJECT NO:

CONTRACT FOR:

CONTRACT DATE:   **12  /  14 /04**

## You are directed to make the following changes in this Contract DESCRIPTION : *Poured all rooms on 1ˢᵗ floor 80 bags Dritek and 12 bags of Ardex featherfinsh. Primed with 2 gallons primer. Poured 10 bags Dritek 700 and feathered out YS 435 with 10 bags Ardex Feather Finish. And buffed out YS435*

PREVIOUS CONTRACT AMOUNT:

TOTAL AMOUNT THIS CHANGE ORDER:

NEW CONTRACT AMOUNT:

TOTAL DOLLAR AMOUNT OF MATERIALS:.          AND/Or TOTAL MAN HOURS   48

Not valid until signed by Project Manager or General Contractor and Site Foreman or Flooring Contractor.

Signature of the Contractor indicates his agreement herewith, including any adjustment in the Contract Sum or Contract Time.
The original Contract was
The Total Extra Hours for the contract are
Net change by previously authorized Change Orders:                                      $
The Contract Sum prior to this Change Order was:                                         $
The Contract Sum will be (0)-increased) (0)-decreased) (0)-unchanged) by this Change Order. The new  Contract Sum including this Change Order will be:                                                                                   $
The Contract Time will be (0)-increased) (0)-decreased) (0)-unchanged) by  days. The Date of Substantial Completion as of the date of this Change Order therefore is:

**General Contractor or**
**Project Manager**

~~Architect~~ *Owner*

**Mathusek Inc,**

Address                                   Address                                   Address 60 West Englewood Ave
                                                                                    Teaneck, NJ 07623

Representative Signature          Representative Signature          Representative Signature

DATE                                      DATE                                      DATE   12/14/04

AIA DOCUMENT G701 - CHANGE ORDER - APRIL 1978 EDITION - 1978

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W. WASHINGTON, D.C. 20006          G701          1978