UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
                                            :    05 Civ. 9097 (WCC)
THE UNITED STATES OF AMERICA for the        :
use of MATHUSEK INCORPORATED,                    ECF CASE
                                            :
             Plaintiff,
                                            :
     - against -                                 **OPINION**
                                            :    **AND ORDER**
J. KOKOLAKIS CONTRACTING, INC.,
SEABOARD SURETY COMPANY and ST. PAUL        :
FIRE & MARINE INSURANCE COMPANY,
                                            :
             Defendants.
                                            :
- - - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                              NICOLETTE & PERKINS, P.A.
                              **Attorneys for Plaintiff**
                              3 University Plaza, Suite 503
                              Hackensack, New Jersey 07601

DAVID A. NICOLETTE, ESQ.
JOHN D. GIAMPOLO, ESQ.

     Of Counsel


                              JOHN RAY AND ASSOCIATES
                              **Attorneys for Defendants**
                              122 North Country Road
                              P.O. Box 5440
                              Miller Place, New York 11764

JOHN W. RAY, ESQ.

     Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff, the United States of America, for the use and benefit of Mathusek, Incorporated ("Mathusek"), brings this action pursuant to the the Miller Act, 40 U.S.C. §§ 3131, *et seq.*, as well as common law principles of breach of contract and unjust enrichment, against defendants J. Kokolakis Contracting, Inc. ("Kokolakis"), Seaboard Surety Company ("Seaboard") and St. Paul Fire & Marine Insurance Company ("St. Paul"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff seeks payment for work Mathusek performed for Kokolakis as a subcontractor, in which capacity it, *inter alia*, installed gymnasium flooring in the Arvin Cadet Physical Development Center at the United States Military Academy in West Point, New York ("West Point"). Defendants now move to compel arbitration pursuant to an arbitration clause that appears in the parties' subcontract. Plaintiff objects, contending that, although the original agreement executed by the parties contained an arbitration clause, a substantial portion of the damages plaintiff seeks were incurred pursuant to a separate agreement that did not impose an obligation to arbitrate. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

Kokolakis was retained as a general contractor by the United States Army Corps of Engineers to perform certain construction work at West Point.[1] On September 13, 2004, Kokolakis and Mathusek entered into a subcontract agreement whereby Mathusek was to install a gymnasium floor

---

[1] In accordance with the Miller Act, which provides that "[b]efore any contract of more than $ 100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government [payment and performance] bonds," 40 U.S.C. § 3131(b), Kokolakis procured bonds from its codefendants Seaboard and St. Paul.

in a West Point facility being constructed by Kokolakis for the price of $285,000 (the "Subcontract"). (Mathusek Aff. ¶ 5.) The Subcontract contained an arbitration clause, which provides as follows:

> [A]ny dispute between Contractor and Subcontractor shall, at Contractor's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If Contractor elects to arbitrate, then the arbitration shall be conducted in Suffolk County, New York. The foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction.

(Complt., Ex. B1 at 11.)

Following execution of the Subcontract, Kokolakis poured the concrete sub-floor upon which Mathusek was to install the wooden athletic surface. (Mathusek Aff. ¶ 6.) An examination of the sub-floor, however, revealed that it was not level, and thus was unsuitable for construction of the sports flooring. (*Id.* ¶ 7.) Accordingly, Mathusek and Kokolakis verbally agreed that Mathusek would provide leveling and remedial work on the concrete surface in addition to installing the gymnasium floor. (*Id.* ¶ 10.) Payment for the remedial work, which was not addressed in the Subcontract, was disbursed on a "time and material basis." (*Id.* ¶ 13.)

Mathusek performed the remedial work and submitted invoices to Kokolakis in the amount of $83,609, of which Kokolakis refused to pay $36,956.36. (Pl. Mem. Opp. Mot. Compel Arb. at 5.) Moreover, a total of $75,152.44 remains unpaid under the Subcontract. (*Id.*) Plaintiff filed the present suit, seeking damages for non-payment under the Miller Act,[2] as well as for breach of

---

[2] Specifically, plaintiff seeks payment pursuant to 40 U.S.C. § 3133(b)(1), which provides:

Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title [40 USCS § 3131] and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the

contract and unjust enrichment. Defendants now seek to compel arbitration, contending that the agreement to perform remedial work on the concrete floor constituted an amendment to the Subcontract and was therefore governed by the arbitration clause. Plaintiff, conversely, contends that the: (1) agreement to perform remedial work on the cement sub-floor was wholly separate from the Subcontract and thus does not include an arbitration provision; and (2) remaining unpaid balance owed under the terms of the Subcontract also cannot be arbitrated, as the clause applies only to "disputes" and defendants have raised no affirmative defenses to plaintiff's claims.[3]

## DISCUSSION

The Federal Arbitration Act ("FAA") provides, in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Moreover, 9 U.S.C. §§ 3 and 4 provide that, when a valid arbitration agreement exists, the court must, upon application of one of the parties, stay the matter and order the parties to proceed to arbitration in accordance with the agreement. The FAA manifests "a liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)

---

material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

[3] Plaintiff's second argument, namely that its claim for payment under the Subcontract need not be arbitrated because the arbitration clause applies only to "disputes," which are not present here, is patently frivolous and ignores the reality that defendants deny all of the material allegations of plaintiff's Complaint.

(internal quotation marks omitted).  Indeed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Even where an arbitration agreement requires the arbitration of disputes falling within the purview of a federal statute, the parties to a valid arbitration agreement are compelled to arbitrate "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum . . . ." *Gilmer*, 500 U.S. at 28 (internal quotation marks omitted).

The Second Circuit has enumerated the following factors to be considered when evaluating a defendant's motion to compel arbitration: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended the plaintiff's statutory claims to be nonarbitrable; and (4) if not all claims are arbitrable, the court must determine whether to stay proceedings on the balance of the claims. *See Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998). In evaluating these criteria, we must be mindful that

> [t]here is a strong federal policy favoring arbitration as an alternative means of dispute resolution. . . .  In accordance with that policy, we will construe arbitration clauses as broadly as possible . . . resolving any doubts concerning the scope of arbitrable issues . . . in favor of arbitration. . . .  Moreover, we have held that the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute*.

*Id.* at 76 (internal quotation marks omitted; citations omitted; emphasis in original).  This is particularly true in cases that, like the present, involve broadly-phrased arbitration clauses, as the Second Circuit has stated that: "[w]here the arbitration clause is broad, there arises a presumption

of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks omitted).

In the present case, our inquiry focuses on the first two elements, as it is clear that all of plaintiff's claims, including those made under the Miller Act, are arbitrable. *See United States ex rel Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc.*, 364 F.2d 705, 707-08 (2d Cir. 1966) (prior agreement between contractor and subcontractor to arbitrate disputes given effect even though Miller Act applied); *cf. John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 293 (S.D.N.Y. 1987) (Conner, J.) ("[E]ven assuming the Miller Act applies, it has long been recognized that the Act's exclusive venue provision may be altered by contract.").

Although "the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295-96 (2d Cir. 1999) (internal quotation marks omitted; footnote omitted); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that state law governs determination of whether parties agreed to arbitrate); 9 U.S.C. § 2 (stating that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). In the present case, the Subcontract provides, and the parties do not dispute, that New York law applies. (Complt. Ex. B1 at 16.)

The arbitration clause at issue herein is unambiguous, and clearly states that the parties agreed to arbitrate "any dispute between Contractor and Subcontractor." (*Id.*, Ex. B1 at 11.)

5

Construing the clause broadly, as the FAA requires, and examining the circumstances under which Mathusek and Kokolakis agreed to conduct the remedial work, we reach the inescapable conclusion that the parties intended to arbitrate *all* disputes arising from the work at West Point, as it is indisputable that the agreement to conduct remedial work on the concrete sub-floor constituted a modification of the original Subcontract and not a separate "remediation subcontract."

> In interpreting a contract under New York law, "words and phrases . . . should be given their plain meaning," and the contract "should be construed so as to give full meaning and effect to all of its provisions." *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation and internal quotation marks omitted). "An interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *Id.* at 124 (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks omitted)).

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). In the present case, the invoices reflecting work done to remedy the concrete sub-floor are entitled "Change Orders." (Complt., Ex. C.) No mention is made of a new agreement; rather, the Change Orders all refer to the "West Point/Arvin Center" project and prominently state: "**You are directed to make the following changes in this Contract**." (*Id.* (emphasis in original).) Additionally, the letter correspondences addressing the remedial work all reference the "Arvin Cadet Physical Development Center . . . Contract # DACA51-02-C-0005," the reference number stated on the cover of the Subcontract. (*See id.*, Ex. B1; Mathusek Aff., Exs. B and C.) These modifications were not unexpected, moreover, as the Subcontract itself accounted for the possibility that events giving rise to additional work might transpire, as evidenced by the language in Article 1 providing that the Subcontract encompasses "all Modifications issued subsequent [to the execution of the Subcontract] . . . ." (*See* Complt., Ex. B1.) Plainly, the only reasonable manner in which to construe the parties' actions is as modifying the Subcontract.

It is axiomatic that "[t]he modification of a contract results in the establishment of a new agreement between the parties which *pro tanto* supplants the affected provisions of the original agreement while leaving the balance of it intact . . . ." *Beacon Terminal Corp. v. Chemprene, Inc.*, 75 A.D.2d 350, 354, 429 N.Y.S.2d 715 (2d Dep't 1980). In the present case, it is undisputable that the parties' subsequent modification of the Subcontract to add the remedial work on the concrete sub-floor incorporated the obligation to arbitrate.[4]

---

[4] Although, as previously stated, we find implausible plaintiff's contention that the parties entered a second, wholly separate "remediation agreement," the Second Circuit has stated in a similar case that: "Given the presumption of arbitrability created by the broad arbitration clause here, we conclude that issues presented by the [second agreement]—for example, whether the [second agreement] terminates, modifies, or otherwise affects the Agreement, and whether it incorporates any of the terms of the Agreement—touch matters within the main agreement to be arbitrated . . . ." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002) (internal quotation marks omitted). The parties would thus be required to submit to arbitration even under less convincing circumstances.

## CONCLUSION

For all of the foregoing reasons, the motion of defendants J. Kokolakis Contracting, Inc., Seaboard Surety Company and St. Paul Fire & Marine Insurance Company to compel arbitration is granted. This action is transferred to the Court's suspense docket pending the disposition of the arbitration proceedings. The parties are directed to proceed with arbitration as soon as is practicable in accordance with the terms of the Subcontract.

SO ORDERED.

Dated: White Plains, New York
       June 19, 2007

                                                    *William C. Conner*
                                                    Sr. United States District Judge